**The BROOK, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 1475, Docket 86–4025.**

United States Court of Appeals, Second Circuit.

Argued June 23, 1986.

Decided Aug. 21, 1986.

Charles T. Crawford, New York City, for The Brook, Inc.

Kenneth L. Greene, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Roger M. Olsen, Asst. Atty. Gen., Michael Paup, Robert S. Pomerance, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for C.I.R.

Leonard J. Henzke, Jr., Washington, D.C. (Lehrfeld & Henzke, Washington, D.C., of counsel), for amicus curiae Nat. Club Ass'n.

Before MANSFIELD, NEWMAN and CARDAMONE, Circuit Judges.

MANSFIELD, Circuit Judge:

The Brook, a tax-exempt social club, appeals the decision of the Tax Court, Jules G. Korner, III, *Judge,* upholding the Commissioner of Internal Revenue's finding that the club had made inadequate tax payments on the portion of its 1979 and 1980 earnings subject to income tax under 26 U.S.C. § 511 (1982).[1] The club had avoided paying any income tax by using losses it suffered in providing meals to non-members to offset its investment income. The Tax Court concluded that 26 U.S.C. § 512(a)(3)(A)[2] permitted the club to deduct from income only those expenses which were directly related to the generation of that income. Since The Brook's losses in providing meals to non-members were un-

---

1. 26 U.S.C. § 511 provides in pertinent part:
 "§ 511. Impositions of tax on unrelated business income of charitable, etc., organizations
 (a) Charitable, etc., organizations taxable at corporation rates.—
 (1) Imposition of tax.—There is hereby imposed for each taxable year on the unrelated business taxable income (as defined in section 512) of every organization described in paragraph (2) a tax computed as provided in section 11. In making such computation for purposes of this section, the term 'taxable income' as used in section 11 shall be read as 'unrelated business taxable income'.
 (2) Organizations subject to tax.—
 (A) Organizations described in sections 401(a) and 501(c).—
 The tax imposed by paragraph (1) shall apply in the case of any organization ... from taxation under this subtitle by reason of section 501(a)."
 26 U.S.C. § 501(c) lists among exempt organizations:

"(7) Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder."

2. 26 U.S.C. § 512(a)(3)(A) provides in pertinent part:
 "§ 512. Unrelated business taxable income
 * * * * * *
 "(3) Special rules applicable to organizations described in paragraph (7), (9), (17), or (20) of section 501(c).—
 (A) General rule.—In the case of an organization described in paragraph (7), (9), (17), or (20) of section 501(c), the term 'unrelated business taxable income' means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income), ...".

related to the generation of the investment income, the court held they were nondeductible. We reject the Tax Court's interpretation of the Tax Code, but affirm the court's decision on a different ground. Under § 512(a)(3)(A) a social club may take a deduction only if that deduction is allowed by some provision of Chapter 1 of the Code. Since the Brook's deduction of the losses it suffered in providing food to non-members is not authorized by any provision of Chapter 1, it was properly disallowed.

The facts are not in dispute. The Brook qualifies as a private social club under 26 U.S.C. § 501(c)(7). Accordingly, it is subject to income tax only on its "unrelated business taxable income." 26 U.S.C. § 511(a)(1). The phrase "unrelated business taxable income" as applied to social clubs is defined in 26 U.S.C. § 512(a)(3)(A) as "the gross income (excluding any exempt function income) less the deductions allowed by this chapter [Chapter I] which are directly connected with the production of the gross income (excluding exempt function income) ...". Exempt function income is "the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests [with] goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid." 26 U.S.C. § 512(a)(3)(B).

During the 1979 and 1980 tax years The Brook had two sources of non-member unrelated business taxable income: (i) investments and (ii) food and beverages sold to non-members at private dinner parties hosted by club members. In both years the club showed substantial investment income, but avoided paying any income tax on this taxable income by deducting from it losses incurred in the sale of meals to non-members. On its returns the Brook attributed the "direct" expenses of feeding the non-members (food, beverages, payroll, etc.) and a portion of the general overhead expenses of running the club to the activity of providing meals to non-members. The Commissioner concedes that the estimate

of "direct expenses" was accurate and that the overhead costs were "properly attributable to and directly connected with the generation of nonmember income." *Parties' Stipulation of Facts* at 5. Once the expenses were allocated, however, it became evident that The Brook suffered substantial losses from serving meals to non-members. In fact, in both 1979 and 1980 its expenses, including the portion of general overhead allocated to the activity of providing food to non-members, were almost twice the income the non-members brought to the club. Furthermore, those years were no fluke. The Brook concedes that it incurred similar losses "for tax purposes from the sale of food and beverages to non-members" for every year between 1972 and 1983. *Id.*

The club lost money each year because it intentionally chose to charge non-members less for meals than it cost to provide them. Though members and non-members paid the same prices for meals, the club admits that the meal prices were "insufficient to recover the full costs [of serving those meals] including overhead." *Id.* at 2. The members indirectly made up part of the shortfall, at least as regards the meals they ate, through use of their non-taxable dues, which constituted "a substantial subsidy to the Club's food and beverage business." *Plaintiff's Petition to Tax Court* at 2. There was no similar, indirect way by which non-members paid the club the full cost of the meals the club provided. Accordingly the club concedes that it simply did not intend to make money from selling food and beverages to non-members. In its words, it "did not sell food and beverages to non-members with an intention that revenues from such sales would exceed all costs relating to such sales including overhead." *Parties' Stipulation of Facts* at 3.

In 1981 the Commissioner issued Rev. Rul. 81-69, 1981-1 Cum.Bull. 351, holding that when "[a] social club operates a food and beverage concession catering to non-members and has consistently sold the food and beverages at prices insufficient to recover the cost of sales[, t]he club may not,

in determining its unrelated business taxable income, reduce its net investment income by the losses from these sales to nonmembers." The Commissioner audited The Brook's 1979 and 1980 returns, and, relying on Rev.Rul. 81–69, concluded that, though the club had reported its "gross income" correctly, it owed $5,000 in back taxes. The Commissioner held that the club could only deduct expenses incurred in feeding non-members up to the amount of income the club received from that activity. The Commissioner rested his finding on the fact that, since the club had not intended to profit from the sales of food and beverages to non-members, the deductions were not allowable under 26 U.S.C. § 162[3] as a trade or business expense. The Brook never suggested that the expenses were deductible under any other provision of the Code.

The Brook petitioned the Tax Court for review of the Commissioner's decision. The Tax Court upheld the Commissioner, but on a theory the Commissioner had never advocated. The Court found that § 512(a)(3)(A) required that there be a nexus between an expense and the income it was used to offset. Since there was no nexus between the food expenses and the investment income, the court disallowed the deduction. Both the Commissioner and The Brook sought reconsideration, arguing that the Court's reading of § 512 conflicted with prior Tax Court decisions, the plain meaning of the statute and the Treasury

Department's proposed regulations. The Tax Court, however, issued a Supplemental Decision on December 17, 1985 affirming its earlier holding.

The Brook appealed.

## DISCUSSION

 The determinative question on this appeal is how § 512(a)(3)(A) should be interpreted. In construing a statute we usually adopt the plain and literal meaning of its language, *United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980), unless it produces an interpretation which makes little sense, *Chemical Mfrs. Ass'n v. Natural Res. Defense Council*, 470 U.S. 116, 105 S.Ct. 1102, 1108, 84 L.Ed.2d 90 (1985); *United States v. Turkette*, 452 U.S. 576, 587, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981), does violence to the purposes Congress sought to serve by the statute, *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979), or is otherwise "demonstrably at odds with the intentions of [the statute's] drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). *See also Bread Political Action Committee v. F.E.R.C.*, 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982).[4]

---

3. 26 U.S.C. § 162 provides in pertinent part:

 "§ 162. Trade or business expenses
 "(a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, . . . ."

4. In interpreting § 512(a)(3)(A) we give some weight to the Commissioner's reading of the section, as expressed in Rev.Rul. 81–69 (1981–1 Cum.Bull. 351), because "it expresses the studied view of the agency whose duty it is to carry out the statute." *Anselmo v. C.I.R.*, 757 F.2d 1208, 1213 n. 5 (11th Cir.1985). *See also Miami First National Bank v. United States*, 443 F.2d 475, 478 (5th Cir.), *cert. denied*, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971). A few courts have suggested the contrary, *Northern Illinois Gas Co. v. United States*, 743 F.2d 539, 543 (7th

Cir.1984); *Strick Corp. v. United States*, 714 F.2d 1194, 1197 (3d Cir.1983); *Whattoff v. United States*, 355 F.2d 473, 477–78 (8th Cir.1966).

A Revenue Ruling is not entitled to the deference accorded a Treasury Regulation or a statute. *Confederated Tribes of Warm Springs, etc. v. Kurtz*, 691 F.2d 878, 881 n. 2 (9th Cir.1982); *Propstra v. United States*, 680 F.2d 1248, 1256 (9th Cir.1982); *Stubbs, Overbeck & Assoc. v. United States*, 445 F.2d 1142, 1146–47 (5th Cir. 1971). We will disregard a Ruling if the Ruling conflicts with the statute it supposedly interprets or with that statute's legislative history or if the Ruling is otherwise unreasonable. *Propstra, supra*, 680 F.2d at 1256; *Ricards v. United States*, 652 F.2d 897, 902, n. 12 (9th Cir.1981); *Estate of Lang*, 613 F.2d 770, 776 (9th Cir.1980); *Stubbs, supra*, 445 F.2d at 1147.

Section 512(a)(3)(A) defines a social club's "unrelated business taxable income" as "gross income (excluding any exempt function income) less the deductions allowed by this chapter which are directly connected with the production of the gross income." The Tax Court read the "directly connected" language to create a requirement that a deduction may only be offset against income it directly helped to generate. Since the expenses The Brook incurred in serving meals to non-members had nothing to do with generating its investment income, the Tax Court concluded that they could not be used to offset that income and should therefore be disallowed. Under this theory a social club's earnings from a specific activity in a given year would place a ceiling on the deductions that activity can generate in that year. Losses from one taxable activity could not be used to offset gains from another. We disagree with this interpretation of the statute.

In plain unambiguous language, § 512(a)(3)(A) provides that allowable deductions should be taken against *"gross income"* and only requires that the deductions be related to the generation of that *"gross* income." (Emphasis added). The Code defines "gross income" as "all income from whatever source derived." 26 U.S.C. § 61. The term refers to the sum total of the taxpayer's income "except [for that which is] specifically exempted." *Commissioner v. Kowalski,* 434 U.S. 77, 83, 98 S.Ct. 315, 319, 54 L.Ed.2d 252 (1978); *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 429–30, 75 S.Ct. 473, 475–76, 99 L.Ed. 483 (1955). *See also Commissioner v. Jacobson,* 336 U.S. 28, 46–47, 69 S.Ct. 358, 367–68, 93 L.Ed. 477 (1949). Accordingly, on its face, § 512(a)(3)(A) authorizes deductions to be taken from the sum total of a club's non-exempt gross income, not merely from the portion of that income connected to the particular deduction. The "directly connected" language simply requires that the deductions arise from the production of gross income, "excluding any exempt function income", i.e., that the deduction be related to the generation of some portion of the club's total taxable gross income.

The foregoing meaning of the statute's plain language is reinforced by its legislative history. The Treasury Department noted, when proposing § 512(a)(3)(A) to the House and Senate, that "gross income" as used in § 512(a)(3)(A) meant *"all* income, other than that from members in exchange for exempt function facilities." *Tax Reform Studies and Proposals,* U.S. Treasury Department, House Comm. on Ways and Means and Senate Comm. on Finance, Jt. Publication, 91st Cong., 1st Sess., Pt. 3 at 325 (emphasis added). There was no suggestion that deductions would only be allowable to the extent they did not exceed the income generated by the activity for which the deduction was taken. To the contrary, the Treasury Department emphasized that "deductions would be allowable if directly connected with *an activity generating income* subject to tax," *id.* (emphasis in original).

To limit a social club's deductions to those related to the specific activity generating the income against which they are offset (in this case the income from service of meals to non-members) would be inconsistent with Congress' intent in adopting § 512(a)(3)(A) as part of the Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487, which was to insure that members of social clubs should not receive tax benefits or suffer tax losses simply because they had "joined together [in a social club] for recreation or pleasure." S.Rep. No. 91–152, 91st Cong., 1st Sess. 71 (1969–3 Cum. Bull. 423, 469–70); H.R.Rep. No. 91–413 (Pt. 1), 91st Cong., 1st Sess. 47 (1969–3 Cum.Bull. 200, 231) U.S.Code Cong. & Admin.News 1969 pp. 1645, 1693, 2027, 2100. The House and Senate Reports stated that Congress hoped "to allow individuals to join together to provide recreational or social facilities on a mutual basis, *without tax consequences* ... [so that] the individual is in substantially the same position as if he had spent his income on pleasure or recreation (or other benefits) without the intervening separate organization." S.Rep. 91–552, *supra,* at 71; H.R.Rep. No. 91–413, *supra,* at 48 U.S.Code Cong. & Admin.

News at 1693, 2100 (emphasis added). *See also Tax Reform Studies and Proposals, supra,* Pt. 3 at 315. If the club members had functioned as individuals or a non-exempt corporation they would be permitted to deduct the cost of carrying on an activity for profit from their total gross income without any requirement that the income in any given year from a particular business activity exceed the deductible expenses of that activity. 26 U.S.C. §§ 162, 212. The effect of the Tax Court's reading of § 512(a)(3)(A), however, would be to penalize social clubs by not permitting them to aggregate deductions and income arising out of unrelated business activity as permitted by § 162 to other taxpayers.

Although the plain language and legislative history of § 512(a)(3)(A) do not support the Tax Court's interpretation of the law, The Brook was still required to establish that § 162 of Chapter 1, which is incorporated by reference in § 512(a)(3)(A), authorizes its deduction from its investment income of the losses suffered from its serving of meals to non-members. This it failed to do. Section 162 allows "as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." An activity qualifies as a "trade or business" capable of generating deductions under § 162 only if the taxpayer engaged in the activity with the intention of making a profit. *See United States v. American Bar Endowment,* 106 S.Ct. 2426, 91 L.Ed.2d 89 (1986) (quoting *Brannen v. Commissioner,* 722 F.2d 695, 705 (11th Cir. 1984)); *Lamont v. C.I.R.,* 339 F.2d 377, 380 (2d Cir.1964); *Bessenyey v. C.I.R.,* 379 F.2d 252, 256 (2d Cir.), *cert. denied,* 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 283

(1967); *Porter v. C.I.R.,* 437 F.2d 39, 40–41 (2d Cir.1971).[5] The Brook has stipulated that it had no such profit motive when it engaged in the unrelated activity of selling meals to non-members. Accordingly, since the plain language of § 512(a)(3)(A) requires that a social club may only deduct an expense if Chapter 1 authorizes that deduction, The Brook improperly used its losses from serving meals to non-members to write off a portion of its gross income from its investment activity.

The Brook, however, contends that Congress did not intend § 512(a)(3)(A) to require that social clubs satisfy all the requirements of § 162 in order to take deductions under the provision. A social club, The Brook argues, may deduct expenses arising from activities which it did not engage in for profit so long as the club engaged in the activity with "a basic purpose of economic gain." The Brook then asserts that a taxpayer intends to realize "economic gain" if it expects to receive some money from that activity, even though the taxpayer knows or indeed intends (as in the present case) that the expense of carrying out the activity (selling meals to non-members) will exceed any income the activity generates. Since The Brook's reading of § 512 has been accepted by the Sixth Circuit, *Cleveland Athletic Club, Inc. v. United States,* 779 F.2d 1160, 1165 (6th Cir. 1985), it is with some reluctance that we reject it.

The Brook's proposed reading of § 512(a)(3)(A) would negate Congress' express purpose that social clubs be treated neutrally with respect to their unrelated business income and neither suffer nor benefit under the Code.[6] The club's inter-

---

5. *See also Five Lakes Outing Club v. United States,* 468 F.2d 443 (8th Cir.1972); *Iowa State University v. United States,* 500 F.2d 508, 522 (Ct.Cl.1974); *Carter v. C.I.R.,* 645 F.2d 784, 786 (9th Cir.1981); *Louisiana Credit Union League v. United States,* 693 F.2d 525 (5th Cir.1982); *Brannen v. Commissioner,* 722 F.2d 695, 704 (11th Cir.1984); *Professional Insurance Agents of Michigan v. Commissioner,* 726 F.2d 1097, 1102 (6th Cir.1984); *Faulconer v. C.I.R.,* 748 F.2d 890, 892 (4th Cir.1984).

6. We do not ignore the fact that §§ 511–13 of the Code are also designed to serve other purposes, including the elimination of unfair competition between tax-exempt and taxable commercial enterprises that had occurred under the laws as they previously stood. Congress first taxed business income not "substantially related" to the objectives of a tax exempt organization in the Revenue Act of 1950, Pub.L. No. 81–814, § 301, 64 Stat. 906, 947 (1950) (codified at 26 U.S.C. §§ 511–13), because "[p]rior law

pretation would grant social clubs a tax advantage by allowing them to take § 162 deductions unavailable to other taxpayers, i.e., for expenses incurred in activities not engaged in for a profit. Indeed, under the Sixth Circuit's view a social club could avoid paying any income tax whatsoever by using otherwise taxable investment income to subsidize the meals of non-members (who would normally be friends or acquaintances of the members, eating at the club at the members' invitation).

The Sixth Circuit suggests that adoption of the "economic gain" test in lieu of the "profit motive" test does not necessarily give the club a tax advantage because under § 162 "[t]he profit factor is really only significant insofar as it is a means of distinguishing between an enterprise carried on in good faith as a 'trade or business' and an enterprise carried on merely as a hobby." *Cleveland Athletic Club, supra,* 779 F.2d at 1165 (quoting *Trustees of Graceland Cemetery Improvement Fund v. United States,* 515 F.2d 763, 768 (1975) (quoting

4A Mertens, *Law of Federal Income Taxation,* § 25.08 (1972) ).[7] We disagree and are persuaded that a switch to an "economic gain" test would give social clubs a tax advantage not enjoyed by other taxpayers.

The advantage becomes readily apparent when one examines the Code's "hobby loss" provision, § 183, which applies to "activit[ies] not engaged in for profit", including "any activity other than one with respect to which deductions are allowable ... under section 162 or under paragraph (1) or (2) of section 212". The mere fact that hobbies generate receipts, or "economic gain", does not entitle them to § 162 tax treatment. *See* 26 U.S.C. § 183(b)(2) (taxpayer may deduct expenses incurred in not-for-profit activity only up to the amount of the income received from the activity); *Brannen, supra,* 722 F.2d at 705 (activity generating some economic return taxable under § 183); *Nickerson, supra,* 700 F.2d at 403 (same); *Dreicer, supra,* 665 F.2d at 1295 (assuming activity which generates economic return could be taxed under

had required only that the profits garnered by exempt organizations be used in furtherance of tax-exempt purposes, without regard to the source of those profits.... As a result, tax-exempt organizations were able to carry on full-fledged commercial enterprises in competition with corporations whose profits were fully taxed ... Congress perceived a need to restrain th[is] unfair competition fostered by the tax laws." *United States v. American College of Physicians,* —— U.S. ——, 106 S.Ct. 1591, 1594–95, 89 L.Ed.2d 841 (1986) (citations omitted). *See also Rensselaer Polytechnic Institute v. C.I.R.,* 732 F.2d 1058, 1061 (2d Cir.1984). In 1969, Congress, for similar reasons, expanded §§ 511–13 to tax the unrelated business income of certain tax-exempt groups not covered by the Revenue Act of 1950, including churches, social welfare organizations, fraternal beneficiary societies, and social clubs. *See* Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487; S.Rep. 91–552, *supra,* at 67; H.R.Rep. No. 91–413, *supra,* at 47; *Tax Reform, supra,* Pt. 3 at 315.

This opinion, however, focuses on the question of why Congress chose to define the portion of a social club's income subject to tax the way it did.

7. The passage from Mertens does not eliminate a "profit motive" test from § 162. Indeed, read as a whole it states that deductions are only available under § 162 if they stem from an activity carried on for profit. The passage, now

appearing at 4A Mertens, *Law of Federal Income Taxation,* § 25.10 at 34 (1986), states: "In order that the taxpayer's activities may constitute the carrying on of a 'trade or business,' he need not have a reasonable expectation of a profit. He must, however, initiate or conduct the enterprise in good faith with an intention of making a profit or of producing income. [Passage quoted in *Cleveland Athletic Club* deleted.] Under any definition, a business means a course of activities engaged in for profit." (Footnotes omitted).

The *Trustees of Graceland* decision could be interpreted as holding that a profit motive is not required under § 162. *Trustees of Graceland, supra,* 515 F.2d at 778. If so, the case espouses a view which has been expressly rejected, as far as we know, in every other circuit or court of claims decision that has considered it, *see supra,* at 10, n. 5 However, the decision may not be so extreme. It held that an incorporated improvement fund, whose principal purpose was to care for and maintain a cemetery for a company which operated the cemetery for profit, was carrying on a "trade or business" and could, therefore, take deductions under § 162. The case may mean no more than that, under its particular facts, the subsidiary enterprise took on the tax status (and profit-motive) of its controlling parent. *See Northern Cal. Cent. Services, Inc. v. United States,* 591 F.2d 620, 626 (Ct.Cl. 1979).

§ 183). Indeed, it is precisely the existence of a profit motive which distinguishes activities taxed under § 162 from those taxed as "hobbies" under § 183. *See, e.g., Eastman v. United States,* 635 F.2d 833, 837 (Ct.Cl.1980); *Carter v. C.I.R.,* 645 F.2d 784, 786 (9th Cir.1981); *Dreicer v. C.I.R.,* 665 F.2d 1292, 1294–99 (D.C.Cir.1983); *Nickerson v. C.I.R.,* 700 F.2d 402, 404 (7th Cir. 1983); *Brannen, supra,* 722 F.2d at 702–04; *Estate of Power v. C.I.R.,* 736 F.2d 826, 827–28 (1st Cir.1984); *Faulconer v. C.I.R.,* 748 F.2d 890, 893 (4th Cir.1984).

Accordingly, the taxpayer engaged in an activity from which he does not intend to profit may only take deductions up to the amount of the income generated by the activity. Under the Sixth Circuit's reading of § 512(a)(3)(A), however, social clubs would be permitted to take such deductions under § 162 regardless of the amount of income generated by the underlying "not-for-profit" activity. In the present case, for instance, although the not-for-profit activity (selling meals to non-members) generated income far below the cost of that activity, the club did not limit itself to offsetting that income against its cost but used income from a profitable activity (private investments) to make up the loss. Thus replacement of § 162's "profit motive" requirement by an "economic gain" test would give social clubs a tax advantage not enjoyed by other taxpayers. Such subsidization departs from Congress' declared purpose in enacting § 512(a)(3)(A).

The Sixth Circuit also rests its interpretation of § 512(a)(3)(A) on the fact that § 512(a) contains two definitions of "unrelated business taxable income". One (with which we are concerned here) applies to social clubs, certain "voluntary employees' beneficiary associations", certain "trusts forming part of a plan providing for the payment of supplemental unemployment compensation benefits" and organizations "the exclusive function of which is to form part of a qualified group legal services plan." 26 U.S.C. §§ 501(c), 512(a)(3)(A). The second definition, set out in § 512(a)(1), applies to all other tax-exempt groups, including charitable corporations, corpora-

tions run by religious groups, and non-profit civic leagues "operated exclusively for the promotion of social welfare". It defines "unrelated business taxable income" as "the gross income derived by any organization from any unrelated trade or business (as defined in Section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business." 26 U.S.C. § 512(a)(1).

The major difference between these two definitions is that in § 512(a)(3)(A) Congress removed the "trade or business" requirement from the definition of unrelated business taxable income and available deductions of social clubs and other § 512(a)(3)(A) entities, substituting the phrase "less the deductions allowed by this chapter [Chapter 1] which are directly connected with the production of gross income (excluding exempt function income)...". Since § 162 only allows deduction of "expenses paid or incurred during the taxable year in carrying on any trade or business", the Sixth Circuit reasoned that applying the section literally to social clubs would read the "trade and business" requirement back into § 512(a)(3)(A) and thereby render meaningless Congress' deletion of the "trade or business" language from that section's definition of "unrelated business taxable income". *Cleveland Athletic Club, supra,* 779 F.2d at 1665. We do not find this reasoning persuasive.

The difference in language between § 512(a)(3)(A) and § 512(a)(1) does not in our view suggest that Congress intended to amend § 162 for the benefit of social clubs. On the contrary, the difference is rooted in Congress' intent to tax entities such as social clubs more comprehensively than charitable and religious organizations, which are dedicated to more altruistic purposes. *Tax Reform* (Pt. 1), *supra,* at 42. Section 512(a)(1) taxes the latter's income only if it is derived from a "trade or business the conduct of which is not substantially related ... to the exercise or performance by [the tax-exempt organization] of its charitable, educational, or other pur-

pose." §§ 512(a)(1), 513(a). As a result, entities covered by § 512(a)(1) are permitted to exclude "all dividends, interest, payments with respect to securities loans ... and annuities" from their taxable income, § 512(b)(1), as well as income from rents, § 512(b)(3), and, in the case of universities, income derived from certain types of research. § 512(b)(7). Indeed, income is only taxable under § 512(a)(1) if it (i) arises from a trade or business; (ii) which is regularly carried on; and (iii) is not substantially related to the taxpayer's tax-exempt purposes. *American Bar Endowment, supra,* 106 S.Ct. at 2429–30; *American College of Physicians, supra,* 106 S.Ct. at 1594–95.

In contrast, § 512(a)(3)(A) organizations, including social clubs, are subject to a much more far-reaching tax than charitable organizations. Social clubs are taxed on all of their income except that portion which comes "from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid." §§ 512(a)(3)(A), 512(a)(3)(B). Indeed, the House, Senate and Treasury Department expressly stated in their reports on § 512 that the investment income of § 512(a)(3)(A) organizations should be taxed. H.R.Rep. No. 91–412 (Pt. 1), *supra,* at 47–48, S.Rep. No. 91–552, *supra,* at 71; *Tax Reform* (Pt. 3), *supra* at 316.

Having provided that the taxable income of social clubs and other § 512(a)(3)(A) organizations should be broader in type and scope than that of § 512(a)(1) entities, Congress accordingly tailored the deductions allowable to each type of organization according to the income to be taxed. Since only "trade or business" income was taxed under § 512(a)(1), Congress provided that § 512(a)(1) organizations could only take deductions "directly connected with the carrying on of that trade or business". It specifically excluded deductions "directly connected" with generating income from dividends, interest, security loans, etc., § 512(b)(1), for the reason that such income was not taxable to charitable corporations. Since § 512(a)(3)(A) taxed the income of social clubs more broadly, however, it also allowed a wider range of deductions to be taken by organizations covered by it (i.e., those "directly connected with the production of the gross income"), including many deductions unavailable to § 512(a)(1) entities. For example, social clubs may deduct under § 212 a range of expenses incurred "in profit seeking activities that do not rise to a level of a 'trade or business'", *Faulconer, supra,* 748 F.2d at 892, including deduction of expenses related to the production of income from investments, rental of real property, sales of property, and research.

It may not, therefore, be inferred from the difference in language between § 512(a)(3)(A) and § 512(a)(1) that Congress intended social clubs to be relieved from the requirements of § 162 so that they would receive an advantage over other taxpayers claiming deductions under that provision. No such intent is expressed in the legislative history. On the contrary, the difference exists because § 512(a)(3)(A) taxes entities covered by it on income not taxed in the case of § 512(a)(1) organizations, and, accordingly, allows § 512(a)(3)(A) organizations deductions related to that broader income, which would be inappropriate under § 512(a)(1). Applying § 162 to social clubs in the same manner as it is applied to other taxpayers does not erode the distinction between the differing provisions of § 512. Like everyone else, social clubs may claim § 162 deductions for expenses they incur when carrying out a "trade or business" (i.e., engaging in an activity with a profit motive). They may also claim deductions under provisions, such as § 212, which do not have a "trade or business" requirement and which may be unavailable to § 512(a)(1) entities. They may not, however, under § 162 deduct from otherwise taxable income losses suffered in an activity not engaged in for profit.

Since the language of § 512(a)(3)(A) is clear and The Brook's claimed deductions do not qualify for allowance under Chapter 1 of the Tax Code, the finding of the Tax Court that The Brook's tax payments were deficient in 1979 and 1980 is affirmed.