PORTLAND GOLF CLUB, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Portland Golf Club v. Commissioner
Docket No. 13436-85.
United States Tax Court
T.C. Memo 1988-76; 1988 Tax Ct. Memo LEXIS 102; 55 T.C.M. (CCH) 212; T.C.M. (RIA) 88076; February 24, 1988. Allen B. Bush, for the petitioner. [1]
Gerald W. Douglas, for the respondent. SCOTT
MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income taxes for its fiscal years ending September 30, 1980, and September 30, 1981, in the amounts of $ 1,828 and $ 3,470, respectively. The issue for decision is whether petitioner, a social club exempt from tax under section 501(c)(7), [2] may offset against unrelated business taxable income from interest, an amount which represents the excess of *105 its deductions over receipts from sales of food and beverages to nonmembers. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly: Petitioner, the Portland Golf Club, is and at all times relevant to the issues involved in this case, has been a nonprofit Oregon corporation exempt from Federal income tax under the provisions of section 501(c)(7). At the time of filing its petition herein, petitioner's principal office was located in Portland, Oregon. For each of its fiscal years ending September 30, 1980, and September 30, 1981, petitioner filed a Form 990-T, Exempt Organization Business Income Tax Return, and a Form 990, Return of Organization Exempt From Income Tax. [3]
*106 Since 1914, petitioner has owned and operated a private golf and country club with a golf course, restaurant and bar, swimming pool, and tennis courts for the benefit of its members, their guests, and nonmembers on a restricted basis. Petitioner's purpose is, and during the years here in issue was, to operate a golf club, restaurant, bar and party facility, swimming pool, and tennis courts for the benefit of its members and their guests. Petitioner's exempt activities are the provision of entertainment, dining, and athletic recreation to its members. During the years in issue petitioner also conducted certain nonexempt activities. During these years petitioner's nonexempt function income was derived from investments which resulted in interest income and from the sales of food and beverages to nonmembers. Petitioner's members are allowed to sponsor guests, friends, and organizations who wish to use petitioner's facilities and services for private parties, receptions, or catering. Petitioner's nonmember food and beverage income resulted when these activities did not meet the requirements of section 512 of the Income Tax Regs. and respondent's ruling thereunder. Petitioner's *107 nonmember food and beverage income from these activities constitutes unrelated business taxable income. Petitioner incurred variable expenses such as food and beverage costs, payroll, and other expenses in connection with its nonmember sales of food and beverages, as well as overhead and other fixed expenses. Petitioner's overhead and other fixed expenses for the sale of food and beverages to nonmembers consisted of items such as administration, taxes, insurance, and depreciation (hereinafter "fixed expenses"). These fixed expenses would be incurred by petitioner whether petitioner served nonmembers or not. On its returns' Forms 990-T, petitioner has consistently deducted an allocable portion of overhead and fixed expenses from nonmember income in accordance with Prop. Income Tax. Regs. section 1.512(a)-(3)(b)(5). [4] Since 1975, through and including the years here in issue, petitioner has used an allocation formula based on the ratio that nonmember sales bore to total sales to compute the amount of overhead and fixed expenses allocated to and deducted from petitioner's unrelated business taxable income on its returns. Such method of allocation is reasonable. [5] For the years *108 at issue an allocable portion of petitioner's overhead costs was properly attributable and directly connected to the generation of nonmember income. Using this method of reporting, petitioner has, since 1975 and up to its fiscal year 1984, incurred losses for tax purposes from the sale of food and beverages to nonmembers and has reported these losses on its From 990-T returns. Many of petitioner's expenses are fixed expenses relating to maintenance and minimum staff requirements of operating its facilities. Petitioner's prices for the sales of food and beverages to nonmembers were in excess of the prices of food and beverages served to members. Petitioner, in determining the prices to be charged for food and beverages to be served to nonmembers attempted to arrive at amounts which would result in the amount received from these sales being in excess of all variable costs directly related to such sales. The variable costs *109 considered were items such as the food costs, supplies, beverage costs and labor costs. Petitioner priced sales of food and beverages to nonmembers so that the cost of food was about 30 percent to 33 percent of the selling price of the meal. Had petitioner chosen to allocate fixed overhead for the years here in issue based on actual use of facilities, it would have had net taxable income for income tax purposes from the sale of food and beverages to nonmembers as shown by the following schedule:
11 Months Ending 9/30/80
Year Ending 9/30/81
Dining
Dining
Room
Bar
Total
Room
Bar
Total
Sales
$ 68,122
$ 16,300
$ 84,422
$ 85,134
$ 21,413
$ 106,547
Variable
expenses:
Food &
Liquor
$ 27,249
5,183
32,432
34,054
6,616
40,671
Labor &
Other
Related
Costs
14,540
5,281
19,821
16,868
7,259
24,127
Other
8,362
1,206
9,568
11,853
1,756
13,609
$ 50,151
$ 11,670
$ 61,821
$ 62,775
$ 15,632
$ 78,407
Excess of
Sales over
Variable
Expenses
$ 17,971
$ 4,630
$ 22,601
$ 22,359
$ 5,781
$ 28,140
Fixed
Expenses
3,153
* 0  $3,153
4,666
* 0  4,666
Profit
$ 14,818
$ 4,630
$ 19,448
$ 17,693
$ 5,781
$ 23,474
*110 From its fiscal year 1975 through its fiscal year 1984, the preparation of petitioner's Form 990-T, Exempt Organization Business Income Tax Returns, in accordance with the Prop. Income Tax Regs., section 1.512(a)-3(b)(5), resulted in losses for tax purposes from the sale of food and beverages to nonmembers. Petitioner's activities were run in a business-like manner and it kept complete and accurate books and records of its activities. Petitioner's operations were overseen by a board of directors (board) of nine members which met at least monthly. The board supervises and reviews the actions of the full-time, professional, general manager, who controls the operations and implements board policy on a day-to-day basis. During the years at issue, petitioner's board was made up of business people and professionals from various backgrounds. Petitioner's board, finance committee, and staff, in a number of instances, discussed and dealt with the problems relating to petitioner's food and beverage sales, and in these discussions, considered these food and beverage operations as important to petitioner's *111 overall financial operations. From time to time the board discussed the nonmember food and beverage sales of petitioner. Petitioner had a standing finance committee which met monthly to review financial statements, conduct studies concerning the financial aspect of petitioner's operations, and generally to discuss the implementing of board policy in the area of financial matters. Under date of August 12, 1981, the finance committee addressed a memorandum to the board attaching an analysis of the dining room operations of petitioner. In the analysis, the committee pointed out that whereas ordinary meals served to members at the club resulted in a loss, amounts received from private party functions including nonmember functions, generated higher than average sales and resulted in a profit. One of the conclusions in this report was that since nonmembers spend more than members per meal, the club should increase the number of nonmember meals served each month, and should encourage club members to bring in individuals and other nonmembers for lunches, dinners and special functions. Subsequently, various other studies were made of the food operations which considered ways of encouraging *112 private parties of members and nonmember activities. During the years here in issue the manager of petitioner was an individual with a bachelor of science degree in hotel and restaurant administration and a bachelor of science degree in recreation administration. This manager had previous employment with hotels and private clubs. The manager was a certified club manager and had served as an officer of the local chapter of Club Managers' Association of America, as well as a state director of Restaurants of Oregon Association. The price of food and beverages at nonmember activities was set by the board and the club management at an amount intended to result in a profit to the club over the direct cost associated with the activity. In addition, these activities were intended to attract additional members to the club, resulting in additional income from initiation fees, and to sharpen the skills of the chef and his staff. During its fiscal year ended September 30, 1980, petitioner received investment income in the form of interest in the amount of $ 11,752. This interest constituted unrelated business taxable income to petitioner. During its fiscal year ended September 30, 1981, petitioner *113 received investment income in the form of interest in the amount of $ 21,414, which also constituted unrelated business taxable income to petitioner. On its Forms 990-T filed for its fiscal years ended September 30, 1980 and September 30, 1981, petitioner showed a loss on food and beverage sales of $ 28,433 and $ 69,608, respectively, computed on the basis of deducting an allocable portion of overhead and fixed expenses from nonmember income based on the percentage of nonmember sales to total sales in accordance with proposed Income Tax Regulations, section 1.512(a)-3(b)(5). Respondent in his notice of deficiency to petitioner included in petitioner's income the interest income received in its fiscal years 1980 and 1981 and disallowed the deductions claimed in those years for losses on food and beverage sales to nonmembers, as well as the loss carryovers which petitioner claimed based on losses on nonmember food and beverage sales for prior years. Respondent explained the disallowance of the food and beverage losses by stating that -- food and beverages are being sold to nonmembers at prices insufficient to cover the cost of such sales. These sales *114 have consistently over a number of years only resulted in losses, consequently it is determined that such sales are not profit-motivated and any net loss cannot be deducted in computing unrelated business taxable income.
A similar explanation with respect to nonmember sales in prior years was given for the disallowance of the loss carryovers. OPINION Respondent's position in this case is that petitioner's losses, properly computed under his proposed Regulations, from the sale of food and beverages to nonmembers are not deductible by petitioner in determining its unrelated business taxable income since the expenses causing these losses were not incurred in a trade or business carried on for profit and, therefore, are not deductible as business expenses under section 162. Respondent takes the position that the fact that petitioner shows a profit from the sale of food and beverages to nonmembers when the income from that activity is computed by determining deductible variable expenses on a percentage of use of facilities basis, is immaterial to determining whether it had a profit motive in conducting that activity, since petitioner actually reported the losses from this activity *115 by allocating the fixed expenses in another acceptable manner. It is further respondent's position that the primary motivation of petitioner's nonmember business activities was to provide a financial benefit to its members in that the revenues from the sales of food and beverages to nonmembers reduce the need for increasing members' assessments or increasing members' prices. Respondent concludes that since petitioner had no objective expectation of recovering all directly allocable expenses of its nonmember sales, it did not engage in the selling of food and beverages to nonmembers with a profit motive. Respondent contends that absent a profit motive, petitioner's nonmember sales of food and beverages do not constitute a trade or business and therefore the expenses connected with this activity are not deductible by petitioner under section 162. Respondent argues that for this reason it is improper to use the losses reported by petitioner from its food and beverage sales to nonmembers to reduce its unrelated business taxable income from interest in each of the years here in issue. Petitioner, in answer to respondent's contentions, argues that since section 512(a)(3)(A) defines *116 certain income of nonprofit social clubs as "unrelated business taxable income" expenses directly connected with the production of that business related income are by definition expenses incurred in a trade or business which meets the requirements of section 162. Petitioner argues that for this reason the profit motivation test is not applicable in determining whether an activity conducted by a nonprofit social club is a trade or business. Petitioner further argues that in any event it did intend to make a profit and did make a profit on its nonmember food and beverage sales. Petitioner concludes that it therefore properly aggregated income and expenses from all nonexempt sources to arrive at its unrelated business taxable income. Petitioner, a tax exempt social club, under the provisions of section 501(c)(7) is generally exempt from income tax under section 501(a). However, as a nonexempt social club, petitioner is subject to the tax imposed by section 511 on unrelated business taxable income pursuant to section 501(b). *117 The term unrelated business taxable income is defined in section 512(a)(1). [6]Section 512(a)(3) sets forth specific provisions with respect to the unrelated business taxable income of social clubs. [7]Section 512(a)(3)(B)[8] defines exempt function income as the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. *118 It is clear therefore, and neither party argues to the contrary, that amounts paid to petitioner by its members whether by assessment, dues, fees, or for meals, are exempt income but that all other income received by petitioner is unrelated business taxable income. Its income from sales to nonmembers is by definition unrelated business taxable income. Petitioner argues that because of this definition and the legislative history of section 512, it follows that it is not necessary that an activity by a social club be a trade or business in the ordinary sense of that term as used in section 162 to constitute an unrelated taxable income activity of such club. Petitioner argues that respondent in taking a position to the contrary ignores the definition of business taxable income and business activity contained in section 512. Respondent argues that petitioner is incorrect in its interpretation of the statute, since the statute specifically provides that the unrelated business taxable income means the gross income less deductions "allowed by this chapter" which are directly connected with the production of gross income. It is respondent's position that deductions "allowed by this chapter" *119 mean deductions under section 162 and that in order for items to be deductible under section 162 they must be incurred in connection with a trade or business. Respondent in support of his position cites the case of Brook, Inc. v. Commissioner,799 F.2d 833 (2d Cir. 1986), which affirmed in result a Memorandum Opinion of this Court. Respondent in his brief recognizes that the decision of the Second Circuit in Brook, Inc. v. Commissioner, supra, might be considered contrary to the decision in Cleveland Athletic Club, Inc. v. United States,779 F.2d 1160 (6th Cir. 1985). Recently, in a Court-reviewed opinion, we discussed the holding of the Court in Brook, Inc. v. Commissioner, supra, as well as the holding in Cleveland Athletic Club, Inc. v. United States, supra.See North Ridge Country Club v. Commissioner,89 T.C. 563 (1987). In the North Ridge Country Club case we concluded that it was unnecessary for us to choose between the positions with respect to section 512(a)(3) taken in Brook, Inc. v. Commissioner, supra and Cleveland Athletic Club, Inc. v. United States, supra, *120 since we had found in the case there under consideration that the taxpayer's sales of food and beverages to nonmembers were made with a profit motive. The situation here with respect to food and beverage sales is indistinguishable from the situation involved in North Ridge Country Club v. Commissioner, supra.[9] Petitioner had a profit from its sales of food and beverages to nonmembers if only the direct costs incurred in connection with those sales are deducted from the receipts from such sales and also had a profit if a further deduction is made for fixed expenses on a use of space allocation. The fixed costs which petitioner deducted to arrive at the loss for tax purposes were costs which the club would have to pay whether or not it had sales to nonmembers, allocated on a basis of total nonmember sales as compared to total member sales. [10]
*121 We held on the facts in North Ridge Country Club v. Commissioner, supra, that the taxpayer did have a profit motive in its nonmember food and beverage sales activity. Clearly in this case, petitioner likewise had a profit motive in its nonmember food and beverage sales activity. It did intend to make a profit, and did make a profit between the amount received from sales to nonmembers and the costs related to those sales which would not have been incurred absent those sales. [11] It is only by allocating a part of the expenses which petitioner would have in all events incurred on a sales ratio basis, permitted by respondent, to the sales to nonmembers, that a loss results. *122 In North Ridge Country Club v. Commissioner, supra, we stated with respect to respondent's argument that profit motive on any allocation of fixed expenses other than the allocation method used on the taxpayer's returns was immaterial in determining the taxpayer's profit motive as follows (89 T.C. at 572-573): Respondent contends, however, that we must look to taxable income in order to determine whether there is profit motivation. He argues that since petitioner is allowed to deduct an allocable portion of the fixed or indirect costs in arriving at unrelated business taxable income, petitioner should also be required to take these costs into consideration in regard to determining profit motivation. Petitioner is, in effect, says respondent, having it both ways. While there is a certain pleasing symmetry to respondent's argument, we do not believe it to be determinative of the question before us. [18] The record as a whole makes it apparent that petitioner was seeking profit from these activities and we so hold. *123 Respondent argues that to permit petitioner to offset the loss from its nonmember sales of food and beverages computed in accordance with respondent's proposed regulations against other unrelated business taxable income, in effect, permits petitioner to use these nonmember activities to cause its dues, assessments, and meal costs to its members to be less. It is respondent's position that it was to avoid such a result that Congress enacted the special provision with respect to unrelated business taxable income for social clubs exempt from tax under section 501(c)(7). This same argument was made by respondent in North Ridge Country Club v. Commissioner, supra, and was rejected. Likewise respondent's reliance on Ye Mystic Krewe of Gasparilla v. Commissioner,80 T.C. 755 (1983), is misplaced. The facts in that case differ substantially from the facts in the instant case. In that case as we explained in North Ridge Country Club v. Commissioner, supra, we held that the taxpayer could not offset its expenses of staging a mock invasion of Tampa and a parade, its exempt activities, against concession income which it received, *124 since the expenses of staging an invasion and parade were not directly connected with the production of the concession income within the meaning of section 512(a)(3)(A). We pointed out that the taxpayer in Ye Mystic Krewe of Gasparilla v. Commissioner, supra, received only the net income from the concessions and logbook sales so that its expenses with respect to these sales had already been deducted from the gross proceeds and that, therefore, the gross proceeds constituted unrelated business taxable income. In this case, as in the North Ridge Country Club case, petitioner's activities with respect to sales of food and beverages to nonmembers results in a loss when the costs related thereto including a pro rata part of fixed expenses (computed by a method respondent agrees is acceptable) are considered. In our view there is no distinction between the instant case and the situation we considered in North Ridge Country Club v. Commissioner, supra, a Court-reviewed case. Based on our reasoning and holding in that case, and for the reasons set forth herein, we hold that petitioner is entitled to offset its unrelated business taxable income *125 from interest by its loss from its nonmember food and beverage sales computed by allocating a portion of its fixed expenses to the nonmember food and beverage sales activity in a manner which respondent agrees is acceptable. [12]
Decision will be entered for the petitioner.
Footnotes
1. An amicus curiae statement was filed by Leonard J. Henzke, Jr. as counsel for The National Club Association. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue. Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. The return for petitiooner's fiscal year ending September 30, 1980 was a return for a short taxable year of eleven months. Prior to this fiscal year petitioner had a fiscal year ending October 31, but applied for an received authority to change to a fiscal year ending September 30, 1980, resulting in the return for its fiscal year 1980 being for the period November 1, 1979 through September 30, 1980. ↩
4. This proposed regulation was withdrawn as of January 23, 1987 by notice published on January 26, 1987 in the Federal Register. 52 Fed. Reg. 2724-2725↩. 5. The parties stipulated to this fact in the exact language used in this opinion. ↩
*. Fixed expenses are included under Dining Room. ↩
6. Sec. 512(a)(1) provides as follows: (1) General Rule. -- Except as otherwise provided in this subsection, the term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the modifications provided in subsection (b). ↩
7. Sec. 512(a)(3)(A) provides as follows: (A) General Rule. -- In the case of an organization described in section 501(c)(7) or (9)↩, the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income), both computed with the modifications provided in paragraphs (6), (10), (11), and (12) of subsection (b). * * * 8. Sec. 512(a)(3)(B) provides as follows: (B) Exempt Function Income. -- For purposes of subparagraph (A), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. Such term also means all income (other than an amount equal to the gross income derived from any unrelated trade or business regularly carried on by such organization computed as if the organization were subject to paragraph (1)), which is set aside * * *. ↩
9. In fact, after the filing of the opinion in North Ridge Country Club v. Commissioner,89 T.C. 563 (1987), petitioner forwarded a copy of the opinion to the Court with a letter that stated in part as follows: Enclosed please find a copy of the recent Tax Court decision in North Ridge Country Club v. CIR. As you recall, this case involved similar issues as the above-referenced case. * * * At present, I do not think additional argument need by made in the Portland Golf Club case other than to say that we concur with the decision in North Ridge Country Club and its rationale. If, upon reflection, I think further argument would clarify any issue of our case in light of the North Ridge Country Club case, I would petition the court for leave to file a supplemental brief. A copy of petitioner's letter to the Court with its attachment was sent to respondent's counsel but respondent's counsel did not request that he be permitted to file any further brief in an attempt to distinguish the North Ridge Country Club↩ case from the instant case. 10. Since food and beverages sold to nonmembers were sold at prices in excess of food and beverages sold to members this result is not surprising but rather might well be anticipated. Respondent has stipulated in this case, however, that this method of allocation is proper and acceptable in computing petitioner's unrelated business taxable income from food and beverage sales. We therefore have not considered whether the facts in this case support such an expense allocation in arriving at income or loss from nonmember food and beverage sales for income tax purposes. ↩
11. We have not ignored respondent's statement that this is not a fact for petitioner's fiscal year 1981. However respondent bases this statement on a schedule in petitioner's Form 990-T for its fiscal year 1981 which did not properly segregate costs which would not have been incurred absent the nonmember sales from other costs. The evidence clearly shows that petitioner had income from nonmember sales based on deducting from such sales only expenses which would not have been incurred absent such sales and respondent does not seriously contend to the contrary. ↩
18. We note that is is respondent who allows the deduction of the indirect fixed costs against the nonexempt income; costs which otherwise would be borne in their entirety by the club membership.↩
12. Respondent does not argue in this case as he did in North Ridge Country Club v. Commissioner,89 T.C. 563↩ (1987), that petitioner is not entitled to offset a loss from one of its unrelated business taxable income activities against a profit from another such activity. Here respondent only argues that the loss from petitioner's nonmember food and beverage sales should not be offset against the interest unrelated business taxable income because the nonmember food and beverage sales activity was not engaged in with a profit motive. Since we have concluded that the activity was engaged in with a profit motive, we do not need to consider further, based on respondent's argument, whether the excess of expenses over income from the nonmember sales of food and beverages may be deducted from the interest income received by petitioner.