The CLEVELAND ATHLETIC CLUB,
INC., Plaintiff-Appellant,

v.

The UNITED STATES of America,
Defendant-Appellee.

No. 84–3782.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 19, 1985.
Decided Dec. 23, 1985.

Frank R. Osborne, argued, Roudebush, Brown & Ulrich Co., L.P.A., Cleveland, Ohio, for plaintiff-appellant.

John M. Siegel, Asst. U.S. Atty., Cleveland, Ohio, Jonathan B. Forman, Robert Pomerance (argued), Trial Atty.—Tax Div., U.S. Dept. of Justice, Washington, D.C., Glenn L. Archer, Jr., Lead Counsel, Michael L. Paup, Ann Belanger Durney, for defendant-appellee.

Leonard J. Henzke, Lehrfeld & Henzke, argued, Washington, D.C., for amicus curiae—Nat. Club Ass'n.

Before KENNEDY and MILBURN, Circuit Judges; and WEICK, Senior Circuit Judge.

WEICK, Senior Circuit Judge.

Plaintiff-Appellant The Cleveland Athletic Club ("the Club") appeals from an Order of the District Court for the Northern District of Ohio, Eastern Division, Aldrich, J., granting the Defendant-Appellee's Cross Motion for Summary Judgment, denying the Plaintiff-Appellant's Cross Motion for Summary Judgment, and dismissing Plaintiff's Complaint in this civil tax refund action.

I.

The relevant facts are as follows. The Club is a tax-exempt social club pursuant to sections 501(a) and 501(c)(7)[1] of the Internal Revenue Code of 1954 ("the Code"), 26 U.S.C. §§ 501(a), 501(c)(7). Under sec-

---

1. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. SEC. 501(c) LIST OF EX-

EMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a): * * (7) Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder.

tions 501(b) and 511(a) [2] the Club is subject to income tax on its "unrelated business taxable income." A general definition of "unrelated business taxable income" appears in section 512(a)(1) of the Code. It is as follows:

(1) **GENERAL RULE.**—Except as otherwise provided in this subsection, the term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the modifications provided in subsection (b).

For taxable years beginning before January 1, 1970 social clubs were not subject to federal income tax on their unrelated business income. However, for taxable years beginning after December 31, 1969 social clubs became subject to tax on their unrelated business income under a portion of the Tax Reform Act of 1969, Pub.L. 91–172, 83 Stat. 487. That act added section 512(a)(3)(A) which provides a special definition of "unrelated business taxable income" applicable, *inter alia*, to section 501(c)(7) social clubs. That subsection provides:

(A) **GENERAL RULE.**—In the case of an organization described in section 501(c)(7) or (9), the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income), both

computed with the modifications provided in paragraphs (6), (10), (11) and (12) of subsection (b) ...

The Club provides entertainment, amusement, and athletic recreation to its members. During the years in question (fiscal years ending June 20, 1975, 1976, 1977, and 1978) the Club derived unrelated business income from two sources—investments, and sales of food and beverages to non-members who would eat and drink and be served at the Club—in addition to tax-exempt income primarily from membership dues.

In connection with the non-member sales of food and beverages the Club incurred direct expenses such as cost of goods sold, salaries, and other directly related expenses, and indirect or overhead and fixed expenses. The indirect or overhead expenses consisted of items such as rent, insurance, and depreciation. The fixed expenses would have been incurred whether the Club served non-members or not. An allocation formula based on the ratio that non-member sales bore to total sales was used to compute the proper amount of fixed expenses deductible from unrelated business income. The government concedes that these indirect expenses were reasonably allocated. The allocation is not an issue.

During each year in question gross non-member sales receipts exceeded the direct expenses or cost of sales attributable thereto. However, each year when the indirect expenses were allocated a net sales to non-members loss resulted. Each year the Club subtracted this loss from its net investment income to arrive at unrelated business taxable income or loss.

---

**2.** SEC. 501(b) TAX ON UNRELATED BUSINESS INCOME AND CERTAIN OTHER ACTIVITIES.—An organization exempt from taxation under subsection (a) shall be subject to tax to the extent provided in parts II, III, and VI of this subchapter, but (notwithstanding parts II, III, and VI of this subchapter) shall be considered an organization exempt from income taxes for the purpose of any law which refers to organizations exempt from income taxes. SEC. 511. IMPOSITION OF TAX ON UNRELATED BUSINESS INCOME OF CHARITABLE, ETC.,

ORGANIZATIONS. (a) CHARITABLE, ETC., ORGANIZATIONS TAXABLE AT CORPORATION RATES.—(1) IMPOSITION OF TAX.—There is hereby imposed for each taxable year on the unrelated business taxable income (as defined in section 512) of every organization described in paragraph (2) a tax computed as provided in section 11. In making such computation for purposes of this section, the term "taxable income" as used in section 11 shall be read as "unrelated business taxable income."

For the fiscal year ending June 30, 1975 the Club reported an unrelated business loss of $9,970.00. For the fiscal year ending June 30, 1976 the Club reported unrelated business income in the amount of $4,585.00. (There is a $500 variance between this figure and the figure shown in the chart in footnote 3, however, the difference is of no consequence to the result reached in this case.) In 1976–77 the Club reported a loss in the amount of $15,036.00. Finally, for the year ending June 30, 1978 the Club reported unrelated business taxable income in the amount of $5,043.00. The 1977 loss was first carried back to 1976, and then forward to 1978, pursuant to section 512(b)(6), thereby eliminating the taxable income reported for those years.[3]

In sum, for the years in question, the Club realized net investment income in the total amount of $149,508.00 and unrelated net losses on sales to non-members in the total amount of $164,886.00 resulting in no unrelated business taxable income for the period.

The Commissioner disallowed all the losses claimed on the theory that each unrelated business activity must be considered separately and not aggregated; that the Club did not have a profit motive with respect to its sales of food and beverages to non-members; and, that the deductions attributable to sales of food and beverages could only be allowed to the extent they did not exceed food and beverage sales gross income.

On August 31, 1981 the Internal Revenue Service issued a Notice of Deficiency in income taxes paid for the four years in question for the total amount of $31,357.00. The Club paid the deficiency, with interest, and filed a Claim for Refund, which claim was disallowed on May 13, 1982. The Club then commenced the present suit in the District Court for a refund of the amount paid, plus statutory interest.

Pursuant to Fed.R.Civ.P. 56(c) the parties filed Cross-Motions for Summary Judgment. The trial judge, upon consideration of the pleadings, affidavits, and exhibits, denied the Club's Motion, granted the government's Motion, and dismissed the Complaint, primarily on the ground that the Club's primary motive with respect to the food and beverage activity was not to earn a profit, but rather to lessen the financial burden on its members.[4]

## II

There are basically two issues on appeal.

1) Whether the Club may net the excess expenses attributable to sales of food and beverages to non-members against the income from investments and thereby reduce or eliminate unrelated business taxable income for the years in question.

2) Whether the District Court properly granted summary judgment for the govern-

---

**3.**

CLEVELAND ATHLETIC CLUB
BREAKDOWN OF UNRELATED BUSINESS GROSS
INCOME AND EXPENSES—1975–1978

| | 1975 | | 1976 | | 1977 | | 1978 | |
|---|---|---|---|---|---|---|---|---|
| | Inv.[°] | Food/[°°] Bever. | Inv. | Food/ Bever. | Inv. | Food/ Bever. | Inv. | Food/ Bever. |
| Gross Income | 34,346 | 184,473 | 35,873 | 117,189 | 36,915 | 246,197 | 42,374 | 135,843 |
| Cost of Sales | -0- | 108,617 | -0- | 80,434 | -0- | 166,716 | -0- | 94,668 |
| Gross Profit | 34,346 | 75,856 | 35,873 | 36,751 | 36,915 | 79,481 | 42,374 | 41,175 |
| Overhead & Misc. Expenses | -0- | 120,172 | -0- | 68,539 | -0- | 131,432 | -0- | 78,506 |
| Net Income | 34,346 | (44,316) | 35,873 | (31,788) | 36,915 | (51,951) | 42,374 | (37,331) |
| Totals | | (9,970) | | 4,085 | | (15,036) | | 5,043 |

° = Investment income.
°° = Income from sales of food and beverages to non-members.

---

**4.** *See, Cleveland Athletic Club v. United States,* 588 F.Supp. 1305 (N.D.Ohio, 1984).

ment on the first issue on the ground that the claimed deductions failed to meet the requirements of section 162(a) of the Code.

The result we reach concerning the first issue makes it unnecessary for us to fully address the second issue.

*Arguments—Issue One*

The Club argues that Code Section 512(a)(3)(A) does not have a profit motive requirement. Section 512(a)(1) (not applicable to Section 501(c)(7) organizations such as the club) provides that "unrelated business taxable income" includes only the gross income derived from "any unrelated trade or business" and expressly authorizes subtraction from gross income of "deductions allowed by this chapter which are directly connected with the carrying on of such trade or business." 26 U.S.C. Section 512(c)(1). On the other hand, Section 512(a)(3)(A), applicable to Section 501(c)(7) organizations such as the club, expressly eliminates the "trade or business" language and defines the term "unrelated business taxable income" as "gross income (excluding any exempt function income) less the deductions allowed by this chapter which are directly connected with the production of gross income." 26 U.S.C. Section 512(a)(3)(A).

The Club contends the IRS ignored the distinction in issuing Revenue Ruling 81–69 which is based on a case involving an organization governed by section 512(a)(1) and not 512(a)(3)(A).

The Club further contends the distinction is explained by Treasury's *Tax Reform Studies and Proposals*, (H. Ways and Means Comm. and Senate Finance Comm. Jt. Pub. Feb. 5, 1969), Pt. 3, at 324:

Thus, under the proposal, all income, other than that from members in exchange for exempt function facilities, would be included in gross income, whether or not the activities generating the income were sufficient to meet the requirements of a 'trade or business regularly carried on' generally applicable under the unrelated business income tax.

That publication continued:

However, consistent with the elimination of the 'trade or business regularly

carried on' tests, deductions would be allowable if directly connected with *an activity generating income* subject to tax, rather than only if directly connected with an unrelated trade or business regularly carried on. (emphasis in original) *Id.*, at 325.

The Club attacks the trial court's reliance on *Adirondack League Club v. C.I.R.*, 55 T.C. 796 (1971), *aff'd per curiam*, 458 F.2d 506 (2nd Cir., 1972) which the Club points out involved the attempted deduction of member activity losses from non-member income. *Adirondack League* also involved tax years prior to the Tax Reform Act of 1969 and the enactment of section 512(a)(3) and an organization which had lost its exemption and was being taxed as a for-profit corporation.

The Club argues that section 512(a)(3)(A) requires all unrelated business income and losses to be aggregated rather than treated separately. It relies on Proposed Treasury Regulation § 1.512(a)–3(b)(3) to demonstrate the integral character of the net income, or loss, which constitutes unrelated business taxable income under section 512(a)(3)(A).

That proposed regulation provides:

(3) *Income from more than one source.* In the case of a social club or an employees' association which derives gross income (excluding exempt function income) from two or more sources, its unrelated business taxable income is computed by aggregating its gross income from all such sources and by aggregating its deductions allowed with respect to such gross income.

The IRS will allow non-member food and beverage business expenses as deductions but only to the extent of gross income from non-member sales. The Club argues there is no justification for this approach. If an item is allowable as a deduction, the Club argues, all of that item must be included as a deduction, not merely a portion.

Relying on *Trustees of Graceland Cemetery Improvement Fund v. United States,*

515 F.2d 763 (Ct.Cl., 1975) the Club contends that the absence of a profit motive does not defeat the deductibility of expenses from taxable income by an organization generally exempt from taxation under section 501(a). The Court of Claims in *Graceland Cemetery* indicated that section 162 only requires profit motivation to distinguish hobby activities of individuals or controlled corporations from a taxable trade or business. The application of the profit motive test in this situation, the Club argues, is contradictory and meaningless since the Club's non-member business is clearly not operated as a hobby but rather as a trade or business and so entitled to the expense deductions.

The government's principal argument is based on the Congressional policy behind enactment of the unrelated business income tax provisions of the Code. That policy was to tax investment income of social clubs and other exempt organizations and disallow extension of the exemption to such investment income. *See,* H.Rept. 91–413 (Part 1) (1969), 1969–3 C.B. 200, 231; S.Rept. 91–552 (1969), 1969–3 C.B. 423, 469–470. The government argues that the practice challenged here allows clubs to circumvent tax on investment income to some extent by reducing the taxable income on investments by a portion of the overhead related to sales of food and beverages to non-members.

To rebut the Club's argument that income and deductions from separate non-member sources should be aggregated the government admits that this is the general rule, but contends it does not apply where the losses derive from an activity lacking the profit-seeking character of a true business. Unrelated business activities first must be engaged in for profit before they may even enter into the aggregation process allowed by subparagraphs (3) and (5) of Proposed Treasury Regulation 1.512(a)–3.

The IRS argues the Club did not have and did not demonstrate a profit-motive with respect to its non-member sales nor could it nor did it show that it ever would have such a motive.

The profit-motive reasoning stems from the language in both sections 512(a)(1) and 512(a)(3)(A) that deductions must first be "allowed by this chapter" and "directly connected with the production of the gross income. This language, the government posits, makes section 162, Trade or Business Expenses, applicable to unrelated business income deductions of social clubs despite the absence of the "trade or business" language from section 512(a)(3)(A).

The government's interpretation of section 512(a)(3)(A) is in line with the position set forth in Revenue Ruling 81–69 which held: "Because the sales to nonmembers are not profit motivated, the social club may not, in determining its unrelated business taxable income under section 512 of the Code, deduct from its net investment income its losses from such sales to nonmembers."

The IRS relies on section 183 by analogy for its position in allowing the food/beverage expenses up to the extent of food/beverage income. Section 183 permits individuals with hobbies to deduct their expenses up to the amount of gross income derived from the hobby.

*Amicus Curiae* National Club Association ("the Association") presents two arguments not offered by the Club. The Association contends the purpose of the "allowed by this chapter" phrase is to set forth a requirement that section 512(a)(3)(A) deductions must satisfy the basic requirements for deductibility under *some* provision in Chapter 1 of the Code but not necessarily limited to section 162. Further, the profit-motivation requirement is only designed to ensure that the basic purpose of the activity be economic gain, and not that of a hobby or recreational activity.

The Association points out that in *Pittsburgh Press Club v. United States,* 536 F.2d 572 (3rd Cir., 1976), *after remand,* 579 F.2d 751 (3rd Cir., 1978), *after second remand,* 615 F.2d 600 (3rd Cir., 1980), the government argued successfully that a

club's non-member food and beverage sales activity may operate at a tax loss and still constitute a profitable business for purposes of revocation of tax-exempt status.

*Analysis*

This is a case of first impression.[5]

After hearing the oral arguments and again reviewing the briefs and the law governing this question, we are of the opinion that this court should reverse the District Court and hold in favor of the taxpayer Cleveland Athletic Club for a number of reasons as set forth below.

The plain language of section 512(a) indicates an intent to tax only unrelated "trade or business income" of organizations governed by sub-section (a)(1) and to allow only deductions allowed by Chapter 1 "which are directly connected with the carrying on of such trade or business." Section 512(a)(1) applies generally to charities and other exempt organizations except social clubs or voluntary employees' beneficiary associations. On the other hand, subsection (a)(3), which applies specifically to social clubs provides that unrelated business income is computed by taking gross income derived from unrelated income, less the deductions "allowed by this chapter which are directly connected with the production of the gross income." The government's position, if adopted, would tax all of the Club's unrelated business income as called for by the statute, but only allow a limited portion of the deductions allowed by the statute. The salient difference is that the section pertaining to social clubs (Sec. 512(a)(3)) begins by computing gross income in general, excepts exempt function income and then subtracts deductions connected with the *production of gross income.* The general section (Sec. 512(a)(1)) begins with gross income from unrelated *trade or business only,* and subtracts deductions connected with the carrying on of such *trade or business.*

We believe that the difference in language is intentional and that the challenged deductions need not necessarily come within the § 162 trade or business allowance, but rather, the deductions are allowable as ordinary and necessary to the production of income with a basic purpose of economic gain. We do not believe that the non-member business activity must generate a tax profit. "The profit factor is really only significant insofar as it is a means of distinguishing between an enterprise carried on in good faith as a 'trade or business' and an enterprise carried on merely as a hobby." *Trustees of Graceland Cemetery Improvement Fund v. United States,* 515 F.2d 763, 778, 206 Ct.Cl. 609 (1975) quoting, 4 A. Mertens, *Law of Federal Income Taxation,* § 25.08 (1972). In the instant case, there is no indication that the non-member activities are carried on as a hobby rather than as a trade or business.

As previously noted, the Treasury's *Tax Reform Studies and Proposals* (H. Ways and Means Comm. and Senate Finance Comm.Jt.Pub. Feb. 5, 1969), Pt. 3, at 324, stated that all income other than exempt function income would be included in gross income regardless of whether the activity generating the gross income met the requirements of a "trade or business regularly carried on" which generally apply under the unrelated business income tax. That publication also stated that to remain con-

---

5. A recent Tax Court Memorandum Decision appears, at first glance, to be on all fours with the present case. *See, The Brook, Inc. v. Commissioner,* [Dec. 42,358(M)], 50 T.C.M. 959 (1985).

In *The Brook* the taxpayer club also had unrelated business taxable income from sales of food and beverages to non-members and investment income and attempted the same aggregation and deductions challenged here. There the parties' arguments and the Tax Court's decision focused primarily on the phrase "directly con-

nected with the production of gross income (excluding exempt function income)" within section 512(a)(3)(A). However, besides the fact that that decision is not controlling here, in the present case, unlike *The Brook,* the parties have stipulated that the claimed deductions "were directly connected with the production of gross income." 588 F.Supp. 1305 at 1307.

Therefore, even if we were to affirm the District Court in the case *sub judice The Brook* decision would not serve as a basis for our decision.

sistent "deductions would be allowable if directly connected with an activity generating income subject to tax, rather than only if directly connected with an unrelated trade or business regularly carried on." *Id.* at 325.

While Proposed Treasury Regulation § 1.512(a)–3(b)(3) has no legal force and effect it is indicative of Treasury's intentions for the application of section 512(a)(3)(A). That Proposed Reg. calls for an aggregation of gross unrelated business income from all sources and an aggregation of deductions allowed with respect to such gross income in calculating unrelated business taxable income.

The government's position is essentially based on Revenue Ruling 81–69 which again held on similar facts that the claimed deductions may only be taken if the activity they are related to is a profit-seeking activity. We believe that this is an improper interpretation of section 512(a)(3)(A), and hence, Rev.Rul. 81–69 is also without legal force and effect. *Idaho Power Co. v. C.I.R.*, 477 F.2d 688 (9th Cir., 1973), *rev'd on other grounds*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974).

The only legal authority cited in Rev.Rul. 81–69 and which forms the basis for that ruling is *Iowa State University of Science and Technology v. United States*, 500 F.2d 508, 205 Ct.Cl. 339 (1974). Unlike the case *sub judice* that case dealt with the attempted deduction of expenses generated by operation of an exempt activity from income generated by a non-exempt function. Also, *Iowa State* was decided under sections 501(c)(3) and 512(a)(1), not sections 501(c)(7) and 512(a)(3)(A) which apply here.

### III

■ Since we believe the District Court improperly interpreted I.R.C. section 512(a)(3)(A), and we hold that the Club may net the excess expenses attributable to sales of food and beverages to non-members against its income from investments, we also hold that the District Court improperly granted summary judgment for the government.

For the reasons set forth above, we reverse the Order granting summary judgment to the Defendant-Appellee and remand to the District Court with instructions to enter summary judgment in favor of the Plaintiff-Appellant Cleveland Athletic Club.