INTER–COM CLUB, INC., a Nebraska Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CV88–L–39.

United States District Court, D. Nebraska.

June 16, 1989.

Richard P. Garden of Cline, Williams, Wright, Johnson & Oldfather, Lincoln, Neb., for plaintiff.

Loren B. Mark, Trial Atty., Tax Div., CTS, Western Region, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OF DECISION

URBOM, District Judge.

This is an action by the plaintiff, Inter-Com Club, Inc. for a refund of federal

income taxes paid for the tax years 1982–1983, 1983–1984, and 1984–1985. Trial was held February 15–17, 1989, without a jury. Having considered the evidence and briefs, the court makes the following findings of fact and conclusions of law.

## I.

The plaintiff, Inter–Com Club, Inc., doing business as the Nebraska Club [hereinafter the Club], is a corporation organized under the laws of the State of Nebraska which operates a restaurant and lounge on the twentieth floor of the FirsTier Bank Building in Lincoln, Nebraska. This is a civil action against the United States brought pursuant to 28 U.S.C. § 1346(a)(1) for the recovery of income tax payments alleged to have been erroneously and illegally assessed and collected. The plaintiff is a tax-exempt social club as described in sections 501(a) and 501(c)(7) of the Internal Revenue Code, 26 U.S.C. §§ 501(a), 501(c)(7).[1]

The Club operates as a private social club providing food and beverage services for the benefit of its members through the Club's restaurant and lounge facilities. Membership in the Club consists of resident members, junior members, and non-resident members. Initiation fees and annual dues are assessed all members.[2] The Club's services and facilities are provided primarily for the use and benefit of Club members; however, the Club also makes its facilities available for use by nonmembers. Nonmembers may use the club's restaurant and lounge when accompanied by a member. Private parties, such as wedding receptions and banquets that are not open to the Club's general membership, are permitted when the function is sponsored by a member and the member is present at the function if the function does not interfere with regularly scheduled Club activities. There are no differences, in price or other-wise, in the food and beverage services provided by the Club to members and non-members.

The plaintiff derives tax-exempt revenue from member dues and fees and sales to members.[3] The Club derives non-exempt income from the sale of food and beverages to nonmembers and from investments which yield interest.

The Club's tax year is from July 1 to June 30. For the tax year ending June 30, 1983, the plaintiff filed tax returns and deducted losses incurred from sales to non-members from investment income in the plaintiff's determination of net unrelated business taxable income. The Internal Revenue Service (I.R.S.) disallowed the deduction and assessed deficiencies. The plaintiff paid the amount owed and filed a claim for a refund with the District Director of the I.R.S., which was denied. The plaintiff seeks a refund in the amount of the deficiency assessed, plus interest.

For the tax years 1983–1984 and 1984–1985, the plaintiff did not deduct nonmember sales losses from interest income on its tax returns. The plaintiff paid the taxes owed and filed claims for refunds for the amount of taxes paid, plus interest. No refunds have been paid by the defendant. The parties have stipulated that the Club has exhausted all administrative remedies available to it in a timely fashion.

The plaintiff reported losses from the sale of food and beverages to nonmembers on the Club's federal tax returns in the tax years ending on June 30, 1981, and 1983 through 1988 and experienced gains from investments in those same years.

## II.

The principle dispute in this case concerns whether the Club may deduct losses incurred on the sale of food and beverages to nonmembers from investment income in determining unrelated business taxable in-

---

1. 26 U.S.C. § 501 exempts from taxation, "Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder."

2. Initiation fees/annual dues are assessed as follows: resident members: $200/$384; junior members: $100/$150; nonresident members: $100/$216.

3. The sale of food and beverages to members is an exempt activity under I.R.C. § 512(a)(3)(B).

come. This issue is apparently one of first impression in the Eighth Circuit, but has been considered by several other courts.

In *Cleveland Athletic Club, Inc. v. United States*, 779 F.2d 1160 (6th Cir.1985), the Sixth Circuit Court of Appeals reversed the ruling of the district court, which granted summary judgment for the government on the ground that the claimed deductions failed to meet the requirements of section 162(a) of the Internal Revenue Code, "Trade or Business Expenses." The court of appeals examined the distinctions between the definitions of unrelated business taxable income provided in § 512(a)(1), which includes only the gross income derived from "any unrelated trade or business," and (a)(3), which is applicable to social clubs and eliminates the "trade or business" language, and concluded that the challenged deductions need not necessarily come within the "trade or business" allowance of § 162.

The government, in *Cleveland Athletic Club*, as in the present case, relied on IRS Revenue Ruling 81–69, 1981–1 C.B. 351, which held that when a social club consistently sells food and beverages to nonmembers at prices insufficient to recover the cost of sales, the club may not, in determining its unrelated business taxable income, reduce its net investment income by the losses from these sales to nonmembers. "Because the sales to nonmembers are not profit motivated, the social club may not, in

determining its unrelated business taxable income under section 512 of the Code, deduct from its net investment income its losses from such sales to nonmembers." *Id.* The revenue ruling was based on *Iowa State University of Science and Technology v. United States*, 205 Ct.Cl. 339, 500 F.2d 508 (1974), a case involving a § 501(c)(3) organization governed by section 512(a)(1), not 512(a)(3)(A).[4] The Sixth Circuit Court of Appeals rejected the asserted applicability of Rev.Rul. 81–69 to a § 501(c)(7) organization governed by § 512(a)(3)(A).

The appellate court in *Cleveland Athletic Club* found the profit factor is only significant insofar as it is a means of distinguishing between an enterprise carried on in good faith as a "trade or business" and an enterprise carried on merely as a hobby.[5] The court held the deductions were allowable as ordinary and necessary to the production of income with a basic purpose of "economic gain." *Id.* at 1165.[6]

The Second Circuit Court of Appeals rejected the "economic gain" test of *Cleveland Athletic Club*, finding that interpretation "would give social clubs a tax advantage not enjoyed by other taxpayers," in *The Brook, Inc. v. Commissioner of Internal Revenue*, 799 F.2d 833, 839 (2d Cir. 1986). The Tax Court had held the club's losses in providing meals to nonmembers were not deductible because the losses were unrelated to the generation of the

**4.** In addition, the taxpayer in *Iowa State University* was attempting to offset the costs of its exempt activity against its nonexempt activity.

**5.** 26 U.S.C. § 183 permits individuals and S corporations with "hobbies" to deduct expenses up to the amount of gross income derived from the hobby. For activities "not engaged in for profit," § 183(b) permits:

(1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and
(2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).

An "activity not engaged in for profit" is defined as "any activity other than the one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212 [deductions for individuals]." *Id.* at § 183(c). Section 183(d) presumes that an activity is engaged in for profit if: the gross income derived from an activity for 3 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), ... unless the Secretary establishes to the contrary....

**6.** The Sixth Circuit has applied the profit motive test to an organization subject to the requirements of § 512(a)(1). *See Professional Insurance Agents of Michigan v. Commissioner*, 726 F.2d 1097 (6th Cir.1984).

investment income. The court of appeals concluded the club's deduction of nonmember losses was not authorized by any provision of Chapter 1, as required by § 512(a)(3)(A).

Noting that 26 U.S.C. § 61 defines "gross income" as "all income from whatever source derived," the court found that "§ 512(a)(3)(A) authorizes deductions to be taken from the sum total of a club's nonexempt gross income, not merely from the portion of that income connected to the particular deduction." 799 F.2d at 837. Based on the statute's legislative history, the court found Congress' intent in adopting § 512(a)(3)(A) was to insure that members of social clubs "not receive tax benefits or suffer tax losses simply because they had 'joined together for recreation or pleasure.'" *Id.* (citation omitted).

Section 162 allows deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business...." Citing cases interpreting § 162 to permit deductions as a trade or business only if the taxpayer engaged in the activity with the intention of making a profit, the court found the club had improperly deducted losses from investment income because the Brook stipulated it had no profit motive in selling meals to nonmembers. The court also examined § 183 and noted, "The mere fact that hobbies generate receipts, or 'economic gain', does not entitle them to § 162 tax treatment."

In *North Ridge Country Club v. Commissioner of Internal Revenue*, 89 T.C. 563 (1987), the Tax Court considered whether a profit motive exists when the nonexempt activities of a social club would have produced taxable income without allocation of fixed and indirect costs. The club received nonmember income from nonmember golf tournaments as well as food and beverage sales at nonmember banquets. The court found that the club engaged in all of its nonmember activities with the intention of making a profit. The club charged nonmembers higher prices than members for the use of club facilities. Separate facilities were maintained for members and nonmembers, and members were given priority in the use of the banquet facilities. In setting prices for nonmember activities, the court found that the club attempted to balance goals of maximizing revenue and remaining competitive, but only direct expenses were taken into account when measuring the profitability of nonmember activities. The court concluded that Congress did not intend to disallow the deduction of losses from one profit-motivated transaction against the revenue from another. The IRS allows the allocation of some indirect and fixed costs against the gross proceeds from the nonexempt activity; therefore, the court held the losses were deductible from investment income.

Similarly, in *Portland Golf Club v. Commissioner of Internal Revenue*, 55 T.C.M. (CCH) 212 (1988), the Tax Court held the taxpayer social club was entitled to offset its interest income by its loss from nonmember sales, computed by allocating a portion of fixed expenses to nonmember sales. The court again found a profit motive where food and beverages were sold to nonmembers at higher prices than those charged members. The club showed a profit if only the direct costs incurred in connection with nonmember sales were deducted from receipts, or if a further deduction was made for fixed expenses on a use of space allocation. The fixed costs which were deducted to arrive at a loss for tax purposes were costs the club would have to pay regardless of nonmember sales, allocated on a basis of total nonmember sales compared to total member sales.

### III.

As a § 501(c)(7) organization, the plaintiff is subject to income tax on "unrelated business taxable income and certain other activities." 26 U.S.C. §§ 501(b), 511(a)(1). Unrelated business taxable income is defined as "the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income)...." 26 U.S.C.A.

§ 512(a)(3)(A). "Exempt function income" means:

> the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid.

*Id.* at § 512(a)(3)(B). The exempt status presumes some nonmember use of the Club, i.e., by dependents and guests of members. 26 U.S.C. § 512(a)(3)(B). The distinction between nonmembers and guests was interpreted in section 3.03 of Revenue Procedure 71–17:

> 1 Where a group of eight or fewer individuals, at least one of whom is a member, uses club facilities, it will be assumed for audit purposes that the nonmembers are the guests of the member, provided payment for such use is received by the club directly from the member or the member's employer.
>
> 2 Where 75 percent or more of a group using club facilities are members, it will likewise be assumed for audit purposes that the nonmembers in the group are guests of members, provided payment for such use is received by the club directly from one or more of the members or the member's employer.
>
> * * * * * *
>
> 4 In all other situations, a host-guest relationship will not be assumed but must be substantiated.

Rev.Proc. 71–17, 1971–1 C.B. 683. Section 4 sets forth recordkeeping requirements. For situations described in §§ 3.03 1 and 3.03 2, the club must maintain adequate records to substantiate the group's composition and that payment was received directly from members or their employers. For all other occasions involving use by nonmembers, the club must maintain books and records containing, *inter alia*, the following information: the date; the total number in the party; the number of non-members in the party; the total charges and the charges attributable to nonmembers; and the charges paid by nonmembers. When a member pays all or part of the charges attributable to nonmembers, the member must sign a statement indicating whether he or she has been or will be reimbursed for the nonmember use and, if so, the amount of the reimbursement. There was evidence that the Club uses a "membership status form" to estimate Club charges to nonmembers in groups of nine or more; however, the Club does not record actual charges to nonmembers.

 I do not entirely agree with either the Sixth Circuit's *Cleveland Athletic Club* or the Second Circuit's *The Brook* decisions. I agree with the Sixth Circuit Court of Appeals insofar as the court concluded that deductions need not necessarily come within the trade or business allowance of § 162, but it does not follow that deductions are therefore "allowable as ordinary and necessary to the production of income with a basic purpose of economic gain." *Cleveland Athletic Club v. United States*, 779 F.2d 1160, 1165 (6th Cir.1985). Section 512(a)(3)(A) permits deductions from gross income which are (1) directly connected with the production of the gross income and (2) allowed by chapter 1. However, the plaintiffs have cited no provision of chapter 1 other than § 162 that allows the challenged deductions. Thus, in order to be deductible, the expenses must be "ordinary and necessary" in carrying on a trade or business. Further, exclusion of the "trade or business" language is not the only distinction between §§ 512(a)(1) and 512(a)(3)(A). Organizations governed by § 512(a)(1) are permitted to exclude, *inter alia*, "all dividends, interest, payments with respect to securities loans ... and annuities" from their taxable income. 26 U.S.C.A. § 512(b)(1).

 Section 513 defines unrelated trade or business for "any organization subject to the tax imposed by section 511, which includes exempt organizations:

> (a) Unrelated trade or business means ... any trade or business the conduct of which is not substantially related (aside

from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its ... purpose or function constituting the basis for its exemption under section 501....

\* \* \* \* \* \*

(c) For purposes of this section, the term 'trade or business' includes *any* activity which is carried on *for the production of income* from the sale of goods or the performance of services. For purposes of the preceding sentence, an activity does not lose identity as a trade or business merely because it is carried on within a larger aggregate of similar activities or within a larger complex of other endeavors which may, or may not, be related to the exempt purposes of the organization. *Where an activity carried on for profit constitutes an unrelated trade or business,* no part of such trade or business shall be excluded from such classification merely because it does not result in profit.

(emphasis added). This language indicates that an unrelated trade or business need not be one that is carried on for profit. The sale of food and beverages to nonmembers is not "substantially related" to the Club's exempt purpose or function. *See* Treas.Reg. § 1.513–1(d)(2) [7]. There is no mention of a profit motive requirement. However, the activity must be "carried on for the production of income from the sale of goods or performance of services."

Nor do the Treasury Regulations require a profit motive. Although the Regulations do not specifically deal with § 512(a)(3)(A) of the Code, section 1.513–1(b) states that, for purposes of section 513, "the term

'trade or business' has the same meaning it has in section 162, and generally includes any activity carried on for the production of income from the sale of goods or performance of services." Section 1.162 does not define trade or business, but notes, "The full amount of the allowable deduction for ordinary and necessary expenses in carrying on a business is deductible, even though such expenses exceed the gross income derived during the taxable year from such business." 26 C.F.R. § 1.162–1(a).

The Second Circuit Court of Appeals, on the other hand, compared §§ 183 and 162 and concluded, "Indeed, it is precisely the existence of a profit motive under § 162 which distinguishes activities taxed under § 162 from those taxed as 'hobbies' under § 183." *The Brook, Inc. v. Commissioner of Internal Revenue,* 799 F.2d 833, 840 (2d Cir.1986). For an individual taxpayer, the comparison between §§ 162 and 183 is applicable.[8] Section 183(b)(2) permits the taxpayer to deduct expenses incurred in not-for-profit activity only up to the amount of income received from the activity, whereas § 162 permits deduction of "all the ordinary and necessary expenses" incurred in carrying on a trade or business. The Second Circuit Court of Appeals concluded that rejecting the profit motive requirement "would give social clubs a tax advantage not enjoyed by other taxpayers," noting that "the club did not limit itself to offsetting [the income from the not-for-profit sales to nonmembers] against its cost but used income from a profitable activity (private investments) to make up for the loss." 799 F.2d at 840. However, § 183 expressly applies only to individuals and S corporations; even if the Club's nonmember sales were not profit-motivated,

---

**7.** 26 C.F.R. § 1.513–1(d)(2) explains that trade or business is "related" to exempt purposes "only where the conduct of the business activities has causal relationship to the achievement of exempt purposes (other than through the production of income); and it is 'substantially related,' ... only if the causal relationship is a substantial one. Thus, ... the production or distribution of the goods or the performance of the services from which the gross income is derived must contribute importantly to the accomplishment of those purposes."

**8.** *See United States v. American Bar Endowment,* 477 U.S. 105, 110 n. 1, 106 S.Ct. 2426, 2429 n. 1, 91 L.Ed.2d 89 (1986), in which the Supreme Court noted that, "The standard test for the existence of a trade or business for purposes of § 162 is whether the activity 'was entered into with the dominant hope and intent of realizing a profit,'" quoting *Brannen v. Commissioner of Internal Revenue,* 722 F.2d 695, 704 (11th Cir.1984). *Brannen* involved a partnership to which § 183 applied.

§ 183 would not apply to the plaintiff. Thus, if no deductions are permitted under § 162, apparently none are permitted at all for expenses "directly connected with the production of" the nonmember income.[9]

Further, in finding that an activity qualifies as a trade or business under § 162 only if the taxpayer engaged in the activity with the intention of making a profit, the court of appeals cited *Five Lakes Outing Club v. United States,* 468 F.2d 443 (8th Cir.1972). In that case, a nonprofit association organized to operate a game preserve and related activities for its members attempted to deduct expenses incurred in operating its recreational programs at a loss from farm rental income. In other words, the club sought to deduct expenses associated with exempt activities from non-exempt income by combining income from exempt club activities with farm rental income, and combining expenses related to each activity. The district court held that all the expenses were ordinary and necessary in carrying on a trade or business and were therefore deductible from the club's gross income. The Eighth Circuit Court of Appeals reversed, holding that a profit motive is a prerequisite to deductibility under § 162(a) in deciding "whether a corporation can merge the tax consequences of profitable and nonprofit activities simply by putting them under a single corporate roof." *Id.* at 445. The court relied on § 277, which applies to nonexempt membership organizations[10] and the "hobby cases" that preceded enactment of § 277.

■ The Tax Reform Act of 1969 expanded the unrelated business income tax to include investment income of 501(c)(7) exempt membership organizations. "Also deductions related to membership functions of *nonexempt* organizations should be confined to member income so as to prevent

investment income from offsetting the cost of such services." H.R.Rep. No. 413, 91st Cong., 1st Sess., *reprinted in* 1969 U.S. Code Cong. & Admin.News 1645, 1689 (emphasis added). Prior to the change, social clubs were not subject to the unrelated business income tax. The change was designed to tax social clubs on all income other than that derived from rendering services to members. The committee recognized:

> Certain nonexempt corporations organized to provide services to members on a nonprofit basis realize investment income, or income from providing services to nonmembers, which is used to defray all or part of the cost of providing services to members.... [T]he effect is to render the investment income nontaxable, and therefore to permit untaxed dollars to be used by the organization to provide services for its members.

*Id.* at 1694. The committee further recognized that "exempt social clubs ... might attempt to avoid the effect of these changes ... by giving up their exempt status and deducting the cost of providing services for members against this income." *Id.* at 1694. Accordingly, the committee added the provision limiting nonexempt social clubs to deductions in furnishing services and goods to members to the extent of income from members or transactions with members.

The committee could have applied similar restrictions on the deduction of nonmember income by exempt social clubs. Instead, when an unrelated business activity "or other commercial exploitation of the exempt function of a tax-exempt organization" is carried on in conjunction with the exempt function, the committee directed "the Secretary or his delegate ... to pre-

---

**9.** The *Brook* court stated that social clubs may claim deductions, in addition to § 162, "under provisions, such as § 212, which do not have a 'trade or business' requirement...." 799 F.2d at 841. Section 212 provides, in part, *"In the case of an individual,* there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year —(1) for the production or collection of income...." (emphasis added).

**10.** 26 U.S.C. § 277 provides, generally, that deductions attributable to furnishing goods and services to members are allowed only to the extent of income derived during the taxable year from members or transactions with members. If deductions exceed income, the excess may be deducted in the succeeding taxable year.

scribe regulations respecting the allocation of income and expenses and other deductions which are attributable to the unrelated activity so as ... to prevent avoidance of unrelated business income tax liability." *Id.* at 1696. There is no mention of a profit motive requirement.

There are no limitations in the Treasury Regulations which permit deductions only up to the amount of nonmember income, as exist in other circumstances, such as § 183, discussed previously, and Treas.Reg. § 1.512(a)–1(d), permitting allocation of expenses attributable to an unrelated trade or business activity which exploits an exempt activity only to the extent that the allocation does not result in a loss from the unrelated trade or business activity.[11]

However, the requirement that the activity be "carried on for the production of income" carries with it a limited profitability requirement. The nonmember income must at least cover expenses directly associated with the goods and services provided. The activity cannot reasonably be considered to be carried on for the production of income if no income is ever received after expenses in carrying on the activity are deducted. Even the Sixth Circuit's "economic gain" test would require this much, as there is no economic gain if direct expenses exceed income. In *Cleveland Athletic Club, supra,* the club's gross nonmember sales receipts exceeded the direct expenses or cost of sales attributable thereto. When indirect expenses were allocated, a net loss from nonmember sales resulted.

Similarly, in *North Ridge Country Club, supra,* the tax court considered the club's profit

not from the vantage point of taxable profit, ... but rather from the standpoint of an incremental increase in available funds to petitioner ... [which] would incur the various fixed costs such as depreciation and overhead whether or not petitioner held golf tournaments and banquets. Thus, each dollar earned over and above the direct costs of each activity served to profit petitioner.

*North Ridge Country Club v. Commissioner of Internal Revenue,* 89 T.C. 563 (1987). Finally, in *Portland Golf Club, supra,* the club showed a profit if direct costs were deducted from nonmember income. Thus, when "profit motive" is construed in this manner, the test is essentially the same as that required to show an activity is carried on for the production of income.

The tax court considered the classification of direct and indirect expenses as separate from the requirement of § 512(a)(3)(A) that deductible expenses be directly connected with the production of the gross income. The court defined "direct" expenses as those expenses "which are incurred and increased in direct proportion to the volume of the particular nonmember activity. Included here are items such as additional labor costs and costs of goods sold. Each dollar of direct expense is traceable to the particular nonmember activity and would not have been incurred but for the activity." *North Ridge Country Club,* 89 T.C. 563 (1987). The parties stipulated that the expenses were "directly connected" with nonmember activity, so it is not clear how the court would define "directly connected."

### IV.

Adopting this terminology, the plaintiff contends that revenues from the sale of food and beverages to nonmembers exceeded all direct costs attributable to nonmember sales and that only when indirect expenses are allocated to nonmember revenues does a tax loss occur. The plaintiff identifies direct costs as salaries, taxes,

---

11. In some respects, the nonmember activity at issue here could be characterized as an exploitation of the exempt activity, as nonmember sales occur in conjunction with the exempt activity (i.e., nonmembers must accompany guests and use the same facilities). However, 26 C.F.R. § 1.513–1(d)(4)(iv) states, "In certain cases, activities carried on in performance of exempt functions may generate good will or other intangibles which are capable of being exploited in commercial endeavors." Seven examples are provided, none of which concern a § 501(c)(7) organization. Nor does the defendant assert that this provision is intended to apply to the plaintiff.

and benefits paid to hourly employees [hereinafter wages], employee meals, laundry, supplies, charge tickets, janitorial services, freight, miscellaneous, postage, donations, and complimentary food. The Club has allocated expenses between member and nonmember activities pursuant to Treas.Reg. § 1.512(c). The defendant disputes the plaintiff's allocation method and characterization of expenses. The defendant asserts that, for the tax years in issue, the plaintiff has experienced a loss after deducting only operating expenses associated with the production of the nonmember income.

▬ The expenses incurred by the Nebraska Club in providing services to nonmembers are, in general, the same as those incurred in providing services to members. However, not all expenses of the Club allowable under § 162 are deductible from unrelated business taxable income. The expenses must also be "directly connected" with the nonmember activity. The Treasury Regulations provide that, in order for a deduction to be "directly connected with the production of the gross income," the item "must have proximate and primary relationship to the carrying on of that business," 26 C.F.R. § 1.512(a)–1(a). Expenses attributable solely to the conduct of unrelated business activities—"direct" expenses—are therefore deductible. When facilities and personnel are used both to carry on exempt activities and unrelated trade or business activities, expenses and depreciation may be allocated between the two uses "on a reasonable basis." *Id.* at § 1.512(a)–1(c). The portion allocated to the unrelated trade or business activity *"is* proximately and primarily related to that business activity" and is allowable as a deduction in computing unrelated business taxable income "in the manner and to the extent permitted by section 162, section 167, or other relevant provisions of the Code." *Id.* (emphasis added).

▬ The instructions accompanying the Form 990–T, Exempt Organization Business Income Tax Return, note that "fixed" or period costs bear no relationship to sales volume and are incurred as a function of time, whereas "operating" costs, or variable expenses, vary to some degree in accordance with sales volume but are more closely associated with the number of days the restaurant and bar are open. Plaintiff's Ex. 61. The allocation factors depend on whether an expense is variable or fixed, not whether the expense is direct or indirect. Thus, the plaintiff has incorrectly allocated expenses on the basis of direct or indirect.

▬ In order to show the nonmember activity is carried on for the production of income, the Club must generate a "profit" after variable expenses which are directly connected to the nonmember activity are deducted from nonmember revenues. If a profit is shown, these expenses may be deducted, as well as an allocated portion of fixed costs that are directly connected to nonmember use of the Club. The plaintiff bears the burden of proving each expense is directly connected to nonmember use. The parties have stipulated the amount of each expense category for the years in question.

▬ The Club separates salary expenses into salaries, benefits, and taxes paid to full-time salaried employees and those who are paid hourly wages. Salary expenses are considered fixed and do not vary with Club usage. Wages are considered variable and may increase with use of the Club. The defendant asserts that all salary expenses should be considered operating expenses. The plaintiff's classification is reasonable and permissible. The following variable expenses may be considered directly connected to nonmember use of the Club for purposes of this case: wages [salaries, benefits, and tax for hourly employees], employee meals, laundry, supplies, janitor, repairs, utensils, glassware breakage and replacement, small appliances, bad debts, computer services, donations, freight, postage, miscellaneous, charge tickets, advertising for employee positions, utilities, telephone, and complimentary food. Other variable expenses of the Club, such as entertainment and convention fees, are not directly connected to the Club's sales to nonmembers and would

be incurred regardless of sales volume. If all expenditures that make the Club more desirable or that have "some benefit to nonmembers" were deductible, the "directly connected" language would be rendered a nullity.

For the tax year ending June 30, 1983, the Club received revenues from nonmember sales totalling $126,044. The cost of the goods sold, computed in accordance with the 990–T instructions, was $44,137, leaving a total before expenses of $81,907. A weighted factor for allocating operating expenses of .137722856 was also computed in accordance with the instructions. Applying this factor to the directly connected variable expenses for 1983, the following expenses may be allocated:

| | | | |
|---|---|---|---|
| Wages | $384.443 | × .137722856 | $52,947 |
| Employee meals | 17,536 | | 2,415 |
| Laundry | 32,841 | | 4,523 |
| Supplies | 28,245 | | 3,890 |
| Charge tickets | 2,457 | | 338 |
| Freight | 1,698 | | 234 |
| Miscellaneous | 1,093 | | ·151 |
| Postage | 5,707 | | 786 |
| Janitor | 14,258 | | 1,964 |
| Computer | 9,116 | | 1,255 |
| Donations | 314 | | 43 |
| Glassware | 18,000 | | 2,479 |
| Utensils | 3,367 | | 464 |
| Bad debts | 1,200 | | 165 |
| Repairs | 20,288 | | 2,794 |
| Small appliances | 390 | | 54 |
| Utilities | 18,662 | | 2,570 |
| Telephone | 3,143 | | 433 |
| Advertising | 1,481 | | 204 |
| TOTAL | | | $77,709 |

Subtracting this amount from the total before expenses of $81,907 shows a profit after variable expenses of $4,198 for the tax year ending in 1983. Thus, these expenses may be deducted in computing unrelated business taxable income.

The defendant challenges the allocation formula used by the plaintiff in determining the allowable deduction for fixed, or period, costs. The instructions to the 990–T provide a sample allocation for a similar social club's sales to nonmembers. Plaintiff's Ex. 61. The weighted factor for allocating period costs is computed by dividing receipts from nonmembers by total restaurant and bar receipts on days of nonmember use, multiplied by the number of days of nonmember use to determine the weighted number of days of nonmember use. The weighted number is then multiplied by the average portion of days that the restaurant and bar were open on non-member use days, e.g., 15 of 24 hours, to determine the equivalent whole days of nonmember use. This number is then divided by the number of days in the year to determine the weighted factor for allocating period costs. The plaintiff skipped the step of multiplying the weighted number by the portion of days the Club is open and simply divided by 365 days in the year.

The instructions note that the sample allocation method is not the only acceptable method for allocating expenses, but the factors must "clearly reflect a reasonable distribution of costs for the time the club's facilities were used by nonmembers." The instructions explain that using the total number of days in the year, rather than the number of days the restaurant and bar were open,

> causes the period costs allocable to nonoperating periods to be charged entirely as an expense of providing the facilities for the use of members and their guests. Such use is the central purpose for the very existence of the club and its facilities and forms the basis of the organization's qualification for exemption.... Allocating nonvariable ... occupancy expenses based on both hours available for use and hours used rather than solely the latter was applied in Rev.Rul. 62–180, 1962–2 C.B. 52.

The allocation factor for fixed costs should have been computed on the basis of the average number of hours the Club was open on days of nonmember usage. Thus, for 1983, the factor would be computed as follows:

| | | |
|---|---|---|
| Receipts from nonmembers | 126,044 | |
| Divided by total receipts on nonmember days | 520,348 | .2422302 |
| Multiplied by number of days of nonmember use | 170 | |
| Equals weighted number of nonmember use | 41.179 | |
| Multiplied by average portion of days Club open on nonmember use days | 14/24 | |
| Equals equivalent whole days of nonmember use | 24.02 | |
| Divided by total number of days in year | 365 | |
| Equals weighted factor for allocating period costs | .06581 | |

Expenses and depreciation attributable to facilities and personnel are allocable pursuant to 26 C.F.R. § 1.512(a)–1(c). Applying the allocation factor to fixed expenses, the following amounts are deductible for 1983:

| | | | |
|---|---|---|---|
| Managers' salaries | $33,576 | × .06581 | $ 2,210 |
| Office salaries | 15,560 | | 1,024 |
| Outside labor | 1,250 | | 82 |

| | | | |
|---|---|---|---|
| Payroll taxes | $ 6,053 | × .06581 | $ 398 |
| Employee insurance | 6,965 | | 458 |
| Employee benefits | 389 | | 26 |
| Chef's salary/taxes | 35,400 | | 2,330 |
| Rent | 62,588 | | 4,119 |
| Depreciation | 48,182 | | 3,171 |
| Parking | 1,655 | | 109 |
| Insurance | 8,086 | | 532 |
| Licenses | 1,091 | | 72 |
| Professional fees | 10,180 | | 670 |
| Property tax | 2,854 | | 188 |
| TOTAL | | | $15,389 |

Dues and Board expenses are not directly connected to nonmember use and therefore are not deductible. Unrelated taxable income is computed as follows:

| | |
|---|---|
| Nonmember income (after deducting cost of goods sold) | $ 81,907 |
| Plus investment income | 25,083 |
| | $106,990 |
| Less deductions for variable expenses | 77,709 |
| and period costs | 15,389 |
| Unrelated business taxable income—1983 | $ 13,892 |

Applying an allocation factor of .15819886 to the Club's operating expenses for the tax year ending June 30, 1984, the following items may be deducted in computing unrelated business taxable income:

| | | | |
|---|---|---|---|
| Wages | $421,312 | × .15819886 | $66,651 |
| Employee meals | 19,439 | | 3,075 |
| Laundry | 20,021 | | 3,167 |
| Supplies | 45,007 | | 7,120 |
| Charge tickets | 3,957 | | 626 |
| Freight | 1,330 | | 210 |
| Miscellaneous | 23,905 | | 3,782 |
| Postage | 8,611 | | 1,362 |
| Janitor (contract) | 1,450 | | 229 |
| Computer | 9,107 | | 1,441 |
| Donations | 481 | | 76 |
| Glassware | 18,000 | | 2,848 |
| Utensils | 3,507 | | 555 |
| Bad debts | 1,200 | | 190 |
| Repairs | 11,836 | | 1,872 |
| Small appliances | 840 | | 133 |
| Complimentary food | 2,785 | | 441 |
| Advertising | 2,488 | | 394 |
| Utilities | 20,817 | | 3,293 |
| Telephone | 4,119 | | 652 |
| TOTAL | | | $98,117 |

In the tax year ending June 30, 1984, the Club received revenues of $153,748 from sales to nonmembers. The portion of the cost of goods sold allocated to nonmembers is $51,861, leaving a total of $101,887 before expenses. When variable expenses are deducted from this amount, the Club shows a profit before fixed expenses of $3,770. Thus, the Club may deduct $98,117 in computing unrelated business taxable income for 1984.

12. 153,748 divided by 741,088 = .20746, × 228 = 47.30146 weighted days of nonmember use, × .58333 [14 divided by 24] = 27.5925, divided by 365 = .075596.

Applying an allocation factor of .075596,[12] the following portions of period costs are deductible:

| | | | |
|---|---|---|---|
| Managers' salaries | $43,522 | × .075596 | $ 3,290 |
| Office salaries | 20,268 | | 1,532 |
| Outside labor | 1,175 | | 89 |
| Payroll taxes | 6,638 | | 502 |
| Employee insurance | 9,521 | | 720 |
| Employee benefits | 6,544 | | 495 |
| Chef's salary/tax | 38,400 | | 2,903 |
| Rent | 64,417 | | 4,870 |
| Depreciation | 52,517 | | 3,970 |
| Parking | 2,072 | | 157 |
| Insurance | 9,193 | | 695 |
| Licenses | 956 | | 72 |
| Professional fees | 9,933 | | 751 |
| Janitor (salary) | 14,991 | | 1,133 |
| TOTAL | | | $21,179 |

The Club's unrelated business taxable income for 1984 is:

| | |
|---|---|
| Nonmember income | $101,887 |
| Plus investment income | 29,237 |
| | $131,124 |
| Less deduction for variable expense | 98,117 |
| and period costs | 21,179 |
| Unrelated business taxable income—1984 | $ 11,828 |

For the tax year ending June 30, 1985, an allocation factor of .200344667 is applied to variable expenses as follows:

| | | | |
|---|---|---|---|
| Wages | $430,249 | × .200344667 | $ 86,198 |
| Employee meals | 19,375 | | 3,882 |
| Laundry | 19,434 | | 3,893 |
| Supplies | 47,051 | | 9,426 |
| Charge tickets | 1,329 | | 266 |
| Freight | 1,248 | | 250 |
| Miscellaneous | 892 | | 179 |
| Postage | 8,528 | | 1,709 |
| Janitor (contract) | 1,110 | | 222 |
| Computer | 5,371 | | 1,076 |
| Donations | 320 | | 64 |
| Glassware | 18,600 | | 3,726 |
| Utensils | 313 | | 63 |
| Bad debts | 1,200 | | 240 |
| Repairs | 18,303 | | 3,667 |
| Small appliances | 222 | | 44 |
| Complimentary food | 5,306 | | 1,063 |
| Advertising | 3,952 | | 792 |
| Utilities | 20,563 | | 4,120 |
| Telephone | 4,676 | | 937 |
| TOTAL | | | $121,817 |

In 1985, the Club received revenues from nonmember sales in the amount of $202,520. After subtracting the cost of goods sold to nonmembers, $66,984, the Club's nonmember revenues before other expenses total $135,536. When variable expenses are subtracted, the Club shows a profit before fixed expenses of $13,719. Therefore, the plaintiff may deduct $121,817.

An allocation factor of .0957355[13] is applied to period costs:

13. 202520 divided by 811391 = .249596, × 240 = 59.903, × .58333 = 34.9434, divided by 365 = .0957355.

## 1124

| | | | |
|---|---|---|---|
| Managers' salaries | $51,227 | × .0957355 | $ 4,904 |
| Office salaries | 27,786 | | 2,660 |
| Outside labor | 1,336 | | 128 |
| Payroll taxes | 7,793 | | 746 |
| Employee insurance | 8,081 | | 774 |
| Employee benefits | 2,111 | | 202 |
| Chef's salary/tax | 39,300 | | 3,762 |
| Janitor (salary) | 16,034 | | 1,535 |
| Tax | 3,965 | | 380 |
| Rent | 67,896 | | 6,500 |
| Depreciation | 65,926 | | 6,311 |
| Parking | 2,115 | | 202 |
| Insurance | 8,400 | | 804 |
| Licenses | 1,902 | | 182 |
| Professional fees | 4,984 | | 477 |
| | | | |
| TOTAL | | | $29,567 |

The plaintiff has not established that the promotional salary expense is directly connected to nonmember sales.

The Club's unrelated business taxable income for 1985 is:

| | |
|---|---|
| Nonmember income | $135,536 |
| Plus investment income | 34,765 |
| | $170,301 |
| Less variable expenses | 121,817 |
| and period costs | 29,567 |
| | |
| *Unrelated business taxable income—1985* | $ 18,917 |

IT IS ORDERED that:

1. the defendant shall make a computation of the tax liability of the plaintiff for each of the tax years in this case based upon the figures of unrelated business taxable income as follows:

 | | |
 |---|---|
 | for 1983 | $13,892.00 |
 | for 1984 | 11,828.00 |
 | for 1985 | 18,917.00 |

 and shall furnish on or before July 10, 1989, to the court and the plaintiff a report of the computation and, in light of the computation, the judgment to be entered;

2. the plaintiff shall have until July 26, 1989, to object to the report; and

3. judgment shall be entered when resolution of any objection to the report has been made.